UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MANUEL TIJERINO

                    Civil Action No.
                    2:24-cv-02290-ILRL-DPC

vs.

                    Section "B"(3)

SPOTIFY USA, INC.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REMOTE 30(B)(6) DEPOSITION OF
SPOTIFY USA, INC.,
THROUGH LINDSEY GORING

August 14, 2025

**CERTIFIED TRANSCRIPT**

Reported stenographically by:

Rita A. DeRouen, CCR, RPR
(CCR #2014018)
(RPR #006908)



TIJERINO vs SPOTIFY USA, INC.                                Pages 2..5
Lindsey Goring - 30(b)(6), 08/14/2025

Page 2

REMOTE APPEARANCES:
REPRESENTING THE PLAINTIFF:

    MANUEL TIJERINO, PRO SE
    515-803-8907
    manueltijerino@hotmail.com


    REPRESENTING THE DEFENDANTS:

    MORRISON FOERSTER
    250 West 55th Street
    New York, New York  10019-9601
    212.336.4092
    BY:  KYLE MOONEY, ESQ.
    kmooney@mofo.com
       - AND -
    MORRISON FOERSTER
    2100 L Street NW, Suite 900
    Washington, D.C.  20037
    202.778.1606
    BY:  CHARLES PROVINE, ESQ.
    cprovine@mofo.com

    Also Present:

    Emma Raviv, Esq., Spotify
    Linna Chen, Esq., Spotify


Reported stenographically by:
Rita A. DeRouen, Certified
Court Reporter #2014018
in and for the State of
Louisiana; Registered
Professional Reporter #6908

Page 3

                I N D E X

                                                Page
Stipulation                                        7
Reporter's Page                                  124
Reporter's Certification                         125

    EXAMINATION
        By Mr. Tijerino                           12
        By Mr. Mooney                             76
        By Mr. Tijerino                          118
        By Mr. Mooney                            120
        By Mr. Tijerino                          121
                * * * * *
                List of Exhibits
PLAINTIFF'S EXHIBITS
Exhibit #A
        (Work from Anywhere Policy, page 73 of    26
        84, SPOTIFYUSA_VENUE_000073)

Exhibit #B
        (Work from Anywhere Policy, page 74 of    48
        84, SPOTIFYUSA_VENUE_000074)

Exhibit #C
        (Submit a Work from Anywhere Request      50
        Policy, page 75 of 84,
        SPOTIFYUSA_VENUE_000075)
Exhibit #E
        (Incorporated Municipalities by Parish in 37
        the Eastern District of Louisiana)

Page 4

EXHIBITS:  (CONTINUED)
Exhibit #F
        (Court's Order, Docket 76)                17
Exhibit #G
        (Notice of Deposition)                    17

DEFENDANT'S EXHIBITS
Exhibit #3
        (Spotify USA Inc.'s Responses and        111
        Objections to Plaintiffs'
        "Venue-Specific" Interrogatories)
Exhibit #6
        (Spotify offer of employment for Employee 85
        1, with redactions, 6/14/17,
        SPOTIFYUSA_VENUE_000001 - 11)
Exhibit #7
        (Employment Agreement for Employee 1,     87
        with redactions, SPOTIFYUSA_VENUE_000012
        - 19)
Exhibit #8
        (Employment Agreement for Employee 2,     90
        with redactions,
        SPOTIFYUSA_VENUE_000020-26)
Exhibit #9
        (Spotify offer of employment for Employee 93
        3, with redactions, 11/26/18,
        SPOTIFYUSA_VENUE_27 - 35)
Exhibit #10
        (Employment Agreement for Employee 3,     94
        with redactions, SPOTIFYUSA_VENUE_000036
        - 43)

Page 5

EXHIBITS:  (CONTINUED)

Exhibit #11
        (Employment Agreement for Employee 4,     96
        with redactions, SPOTIFYUSA_VENUE_000044
        - 50)
Exhibit #12
        (BU Guidelines, with redactions,         101
        SPOTIFYUSA_VENUE_000051 - 63)

Exhibit #13
        (Global WFA Tax Approval for Employees,  104
        with redactions, SPOTIFYUSA_VENUE_000064
        - 72)
Exhibit #14
        (Work from Anywhere Policy, with          99
        redactions, SPOTIFYUSA_VENUE_000073 - 76)

Exhibit #15
        (Work from Anywhere Booklet,             100
        SPOTIFYUSA_VENUE_000077 - 83)

Exhibit #18
        (Artist & Label Partnerships Manager GCC, 106
        Saudi Arabia)

Exhibit #20
        (Artist & Label Partnerships Manager GCC, 106
        Thailand)



TIJERINO vs SPOTIFY USA, INC.                                Pages 6..9
Lindsey Goring - 30(b)(6), 08/14/2025

Page 6

EXHIBITS: (CONTINUED)

Exhibit #22
    (Artist & Label Partnerships Associate    107
    Manager, Philippines)

Exhibit #24
    (Market Strategy & Operation Analyst,    107
    Japan, 8-Month Contract)

Exhibit #25
    (Attachment A, Lead Workforce Planning    108
    Analyst, Customer Service)

Exhibit #26
    (Exhibit C, Spotify Post Job Openings in    109
    Louisiana from ZipRecruiter)

Exhibit #27
    (Parish Information)    78

Page 7

S T I P U L A T I O N

It is stipulated and agreed by and between counsel that the testimony of the witness, SPOTIFY USA, INC., THROUGH LINDSEY GORING, is hereby being taken pursuant to Notice under the Federal Rules of Civil Procedure for all purposes permitted under law.

The witness reserves the right to read and sign the deposition. The original is to be delivered to and retained by MANUEL TIJERINO for proper filing with the Clerk of Court.

All objections, except those as to the form of the questions and/or responsiveness of the answers, are reserved until the time of the trial in this cause.

                    * * *

Rita DeRouen, Certified Court Reporter in and for the State of Louisiana and Registered Professional Reporter, officiated in administering the oath to the witness.

Page 8

(On record at 10:12 a.m.)

THE COURT REPORTER:
    We are now on the record in the matter of Manuel Tijerino v. Spotify USA Inc., United States District Court for the Eastern District of Louisiana, Case No. 2:24-cv-02290-ILRL-DPC.
    Today s date is August 14, 2025, and the time is 10:12 a.m. Central Standard Time.
    This is the deposition of the Rule 30(b)(6) corporate representative of Spotify USA, Inc., through Lindsey Goring, taken pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, as limited by the Court s June 26, 2025 order (Docket 76) to the topic of conditions of employment for Spotify s Louisiana employees.
    Would counsel and parties please state their appearances for the record, and then I will swear in the witness.

MR. TIJERINO:
    Manuel Tijerino, pro se plaintiff.

MR. MOONEY:

Page 9

    Kyle Mooney, Morrison & Foerster, representing Spotify.  And with me today is Linna Chen, in-house counsel with Spotify.

MR. PROVINE:
    And joining online, Charles Provine with Morrison & Foerster on behalf of Spotify.

MS. RAVIV:
    Also online, Emma Raviv, in-house with Spotify.

THE COURT REPORTER:
    Ms. Goring, I will swear you in now, if you would please raise your right hand.

                LINDSEY GORING,
having been first duly sworn, was examined and testified as follows:

THE COURT REPORTER:
    Go ahead, Mr. Tijerino.

MR. TIJERINO:
    All right.

MR. MOONEY:
    If I may, just as I mentioned before, I just wanted to briefly make a



Page 10

quick statement.

MR. TIJERINO:

Yes, sir.

MR. MOONEY:

Thank you.

As you know, Spotify has redacted certain of the documents in this case to remove personally identifiable information and other personal information, such as compensation, for example, relating to Spotify employees, as well as some Spotify confidential internal information that's not relevant to whether Spotify employees are required to reside or work in the Eastern District of Louisiana or the conditions of employment there.

And so Spotify also today will not disclose that information during the deposition. And, for example, the witness will use the same anonymized Employee 1, 2, 3, 4 labels that we've used in some of the documents and that I know you and I have already discussed.

And the reason for that is that,

Page 11

one, the employee information is sensitive; and, two, there, as you know, is no protective order that has yet been entered in the case, and the understanding is that this information certainly may become, and I think will become, public because we've got to file a copy of the transcript.

And so for that reason, we're going to take the same position here that we took with the documents and that you've seen.

And then two quick questions, Mr. Tijerino, before you begin. One, is there anybody present with you today, or no?

MR. TIJERINO:

No, sir. I'm at home and my parents are here, but they're not in the room.

MR. MOONEY:

Fair enough.

And I was going to ask whether you're intending to feed the information today into Chat GPT or any other AI?

MR. TIJERINO:

Page 12

No, sir.

MR. MOONEY:

Thank you. That's all I have, Mr. Tijerino. Go ahead.

EXAMINATION

BY MR. TIJERINO:

Q. All right. So good morning, Ms. Goring. My Manuel Tijerino, and I'm appearing pro se in this matter.

Could you please state your full name for the record.

A. Yes. Lindsey Goring.

Q. What is your current position and employer?

A. My current employer is Spotify, and my current position is senior global HR program manager.

Q. Have you ever had your deposition taken before?

A. No.

Q. Do you understand that you are here today under oath and your testimony has the same force and effect as if it was given in court?

A. Yes.

Q. Have you consumed any alcohol,

Page 13

prescription medication, or any substance in the last 24 hours that could affect your ability to testify truthfully and accurately today?

A. No.

Q. Are you currently under the influence of any drug or alcohol or other substance that would impair your memory, perception, or ability to answer any question -- my questions?

A. No.

Q. Do you understand that if at any point you do not understand one of my questions, you should tell me and I will rephrase it?

A. Yes.

Q. Will you please answer verbally rather than with nods or gestures so the court reporter can record your answers accurately?

A. Yes.

Q. Okay. What is your current business address?

A. Our current business address is 4 World Trade Center, Floor 62, in New York, New York for the U.S.

Q. Have you had an opportunity to review the notice of deposition served in this matter?

A. Is there a specific exhibit that that



TIJERINO vs SPOTIFY USA, INC.                      Pages 14..17
Lindsey Goring - 30(b)(6), 08/14/2025

Page 14

refers to?

Q.  Yes, ma'am.  Let me find it.  That would be Exhibit G.

A.  Yes, I have it in front of me.

Q.  Okay.

MR. MOONEY:

On Exhibit G it looks like it's the first page of the notice.  Is that your intent?  Is that right?

MR. TIJERINO:

Exhibit G is the notice of the deposition, yes, sir.

MR. MOONEY:

But is it just page 1?  That's what was printed.

MR. TIJERINO:

It's page 1 and page 2, but page 2 doesn't have anything, it's just got the certificate of service and the emails.

MR. MOONEY:

So the witness has page 1 in front of her now, if that's good.  If you need page 2, we can go get it.

MR. TIJERINO:

Okay.

Page 15

BY MR. TIJERINO:

Q.  Do you understand that you are hereby testifying as the corporate representative of Spotify USA, Inc., on the topics listed in that notice?

A.  I understand that I'm testifying on behalf of Spotify as relates to the four remote employees in the state -- in the Eastern District of Louisiana and the Work from Anywhere program.

Q.  Are you prepared to testify on behalf of the company about those topics to the best of your knowledge and information available to you?

MR. MOONEY:

Objection; form.

A.  I am prepared to talk about the four remote employees in the Eastern District of Louisiana and our Work from Anywhere program to the best of my ability.

BY MR. TIJERINO:

Q.  Okay.  If you need to take a break at any time, will you let me know so we can go off the record?

A.  Yes.

Q.  Okay.  Do you understand that if an attorney objects to a question, unless instructed

Page 16

not to answer, you still -- you should still answer after the objection is noted?

A.  Yes.

Q.  Okay.  Will you do your best to answer all questions truthfully and completely?

A.  Yes.

MR. TIJERINO:

Okay.  So now I have a little thing to read.  Let's see.  This is for the scope and the purpose of the deposition.

As you may be aware, Defendant filed a motion to dismiss this case filed in the June 24, 2025 hearing.

The Court issued an order on June 26, 2025, Docket 76, stating the instant motion to dismiss shall be held open for the purpose of continued discovery regarding Spotify's uncontested Louisiana employees.

Of interest to this court is the condition of the employment for the aforementioned employees, particularly whether the employment restricts them to work within this district.

Following receipt and review of

Page 17

Defendants' discovery, Plaintiff Tijerino shall give notice of the deposition on the venue matter pursuant to the Federal Rules of Civil Procedure.

The deposition will be limited in scope relative to the condition of the employment for Spotify's Louisiana employees as directed above.

Okay.  So counsel and I have agreed that Spotify's documents produced on July 9, 2025 in Record Document 79 will be premarked as deposition exhibits and the witness will be prepared to testify regarding those documents within the permitable scope of Docket 76.

For the record, I'm making an introduction as Exhibit F a copy of the court's order, Docket 76; and Exhibit G, a copy of my deposition notice for reference during today's questioning.

(Exhibit F was marked.)

(Exhibit G was marked.)

BY MR. TIJERINO:

Q.  Okay.  Did you have a chance to --

MR. MOONEY:



TIJERINO vs SPOTIFY USA, INC.                                    Pages 18..21
Lindsey Goring - 30(b)(6), 08/14/2025

Page 18

Just briefly, Mr. Tijerino.  One, I can't vouch for whether you accurately read from the court order that I don't have in front of me, but --

MR. TIJERINO:

That's Exhibit -- that's Exhibit F.

MR. MOONEY:

Okay, that's fine.  I'm not going to check it now.  The court orders say whatever they say.

The scope of the deposition is the conditions of employment for the Louisiana remote employees and, in particular, whether that employment restricts them to work in the Eastern District of Louisiana, and that's per the June 26 court order at page 1, July 24 court order at pages 1 and 2, the July 30 court order at page 1, the June 24 transcript at pages 53 to 59.

And the witness is prepared to testify about that, including as it relates to the documents that we produced on July 9 that you referenced.

MR. TIJERINO:

Page 19

Okay.  But you're aware that the control and scope is the order, correct, Mr. Mooney?

MR. MOONEY:

Is what order?

MR. TIJERINO:

The Docket Order 76.

MR. MOONEY:

Is that an exhibit?

MR. TIJERINO:

Yes, sir.  Exhibit F.

MR. MOONEY:

Just a second.  Yes, I believe that this order does concern the scope of the deposition that is consistent with the other orders in the transcript that I referenced; I agree with that.

MR. TIJERINO:

Very good.  Okay.  So I'll continue questioning the witness.

BY MR. TIJERINO:

Q.   Do you understand that you're testifying today on behalf of Spotify USA, Inc., as the designated corporate representative and that your testimony will be used by the court for the

Page 20

limited purpose described in the court order?

A.   From my understanding, I am testifying on behalf of Spotify as relates to the four remote employees in the Eastern District of Louisiana and our Work from Anywhere program.

MR. TIJERINO:

Okay.  Let's see.  So this is the foundational geographic scope section of my deposition.  So okay.

So Order 76, scope:  Venue-related discovery limited to Spotify's employees in the Eastern District of Louisiana, focusing on condition of employment for those employees.

Cited authorities:  Docket 76, as clarified by Docket 83.

Okay.  For the record, in Louisiana, the term "parish" is equivalent to the term "county" used in other states.  The Eastern District of Louisiana consists of the following 13 parishes, as shown in Exhibit D from the court's official website:  Assumption; Jefferson; Lafourche; Orleans, which includes the City of New Orleans; Plaquemines;

Page 21

St. Bernard; St. Charles; St. John the Baptist; St. Tammany; Tangipahoa, Terrebonne; and Washington.

BY MR. TIJERINO:

Q.   Without identifying any individual employee by name or other personal identifiable details, please state each of the parishes where one or more of the four Eastern District employees are based there for work purposes, regardless of whether that location was chosen by the employee or designated by Spotify by answering yes or no to each parish by name.

So Assumption Parish would be the first one?

A.   No.

Q.   Okay.  Number 2, Jefferson Parish?

A.   No.

Q.   Number 3, Lafourche Parish?

A.   No.

Q.   Number 4, Orleans Parish?

A.   Yes.

Q.   Number 5, Plaquemines Parish?

A.   No.

Q.   Number 6, St. Bernard Parish?

A.   No.



TIJERINO vs SPOTIFY USA, INC.                                    Pages 22..25
Lindsey Goring – 30(b)(6), 08/14/2025

Page 22

Q.    Number 7, St. Charles Parish?
A.    No.
Q.    Number 8, St. James Parish?
A.    No.
Q.    Number 9, St. John the Baptist Parish?
A.    No.
Q.    Number 10, St. Tammany Parish?
A.    No.
Q.    Number 11, Tangipahoa Parish?
A.    No.
Q.    Number 12, Terrebonne Parish?
A.    No.
Q.    And the last one, Number 13, Washington Parish?
A.    No.
Q.    Okay.  Just to clarify for the record, your "yes" answer for Orleans Parish refers to at least one of the four Eastern District employees currently being based there for work purposes as of today's date, correct?
        MR. MOONEY:
            Objection; form.
A.    The remote employees in the Eastern District of Louisiana chose to live in the Greater New Orleans area.

Page 23

BY MR. TIJERINO:
Q.    Okay.  So job listing/hiring process as it relates to the four Eastern District employees.
        Without identifying any employees by name or other personal identifiable details, within the past three years were there any posted job openings that led to the hiring of any of the four Eastern District employees into their current role?
A.    No.  Three out of four employees were hired based off of a job posting in New York City and started in New York City and then elected to move to the Eastern District of Louisiana.  One employee was acquired by a company and had already chosen to live in the Eastern District of Louisiana.
Q.    Very good.
        Okay.  Without identifying any individual employee by name or other personal identifying details, for each such position, was the job posting location described in a way that matched the actual work's location as referenced in that employee's contract or company policy?
        MR. MOONEY:
            Objection; form.

Page 24

A.    At the time of their hiring, the job posting for three out of four employees was for our New York City office, and their offer letter and offers as such were reflected for New York City.
BY MR. TIJERINO:
Q.    Okay.  Policy application to employees in the Eastern District.  Without identifying any individual employee by name or other personal identifying detail, to your knowledge, are all employees located in the Eastern District of Louisiana required to comply with the full terms of Spotify's Work from Anywhere policy?
A.    All employees within the U.S. and globally are required to abide by our Work from Anywhere policy.
Q.    Okay.  Without identifying any individual employee by name or other personal identifying details, to your knowledge, are all employees located in the Eastern District of Louisiana required to comply with Spotify's employee code of conduct and ethics in its entirety?
A.    All employees in the U.S. and globally are required to abide by our code of conduct

Page 25

policy.
Q.    Without identifying any individual employee by name or other personal identifiable details, as Spotify's designated corporate representative, are there any other company policies that employees located in the Eastern District of Louisiana are required to follow?  If so, please identify them by name.
A.    I will try to identify all that I can remember, but it can vary from -- and this applies to all employees, both at Spotify in the U.S. as well as globally.  But anti-corruption, our side business and conflict of interest policy, code of conduct, anti-discrimination, and so forth.  I do not know all of our policies offhand.
Q.    Okay.  Without identifying any individual employee by name or other personal identifying details, are employees located in the Eastern District of Louisiana contractually bound as a condition of employment to comply with company policies such as the Work from Anywhere policy, the ethics policy, and any other applicable policies you just identified?
A.    All employees in the U.S. and globally are required to abide by our Work from Anywhere



TIJERINO vs SPOTIFY USA, INC.                                Pages 26..29
Lindsey Goring - 30(b)(6), 08/14/2025

Page 26

policy, ethics policy, and our general global policies, yes.

Q.   Okay.  We will now turn to Spotify's Work from Anywhere policy to discuss how it applies to the four Eastern District of Louisiana employees.  And I'm referencing the Document 79-1 filed on July 8, 2025, page 73 of 84, which is included as Exhibit A.

Let me double-check that just to make sure.

(Exhibit A was marked.)

MR. MOONEY:
Exhibit A is the first page of that document.  Is that the only page you want to have in front of her?

MR. TIJERINO:
Let me make sure I gave you the right one.  Yes, sir, it's Exhibit A.

A.   I've got it.

BY MR. TIJERINO:

Q.   The first section of the Work from Anywhere policy is titled Locations; is that correct?

A.   Yes, that's what I'm seeing.

Q.   Okay.  Focusing on the first six words

Page 27

of that section, "Working from anywhere allows you to move" -- am I reading that correctly?

A.   Yes.

Q.   Okay.  That section states that employees can move from their region to anywhere Spotify is registered as an employer and vice versa; is that correct?

A.   From my understanding, yes.

Q.   Okay.  To the best of your knowledge, that means Spotify must be registered as an employer in the Eastern District of Louisiana for an employee to move here under this policy, correct?

A.   Yes.  We are registered in 70 -- I'm sorry, 47 out of 50 U.S. states.

Q.   Okay.  And conversely, to the best of your knowledge, an employer (sic) in the Eastern District could not move to a country where Spotify is not registered as an employer, for example, North Korea, correct?

MR. MOONEY:
Objection; form.
Just, Mr. Tijerino, I think that you meant to ask about employees in the Eastern District.

Page 28

MR. TIJERINO:
Yes, sir, I did.  I said, Employees in the Eastern District could not move somewhere that Spotify is not registered as an employer.

MR. MOONEY:
The court reporter -- you might have misspoke or the court reporter picked it up wrong.  It was taken down as "employer."

MR. TIJERINO:
Yes, sir, I will ask it again.

BY MR. TIJERINO:

Q.   So conversely, to the best of your knowledge, an employee in the Eastern District could not move to a country where Spotify is not registered as an employer, for example, North Korea, correct?

A.   Correct.

Q.   Okay.  To clarify for the record, the Work from Anywhere policy sets limits on where employees can relocate from and to based on where Spotify is registered as an employer, correct?

A.   Yes.  We need to make sure that we have the ability to payroll employees, pay employees,

Page 29

and provide benefits.

Q.   Okay.  And to be clear, the four Eastern District of Louisiana employees are required to comply with the same Work from Anywhere policy, including its location restrictions, as all other employees, correct?

A.   Yes.  All employees, both in the U.S., globally, including the four employees in the Eastern District of Louisiana, are required to abide by our policy.

Q.   Okay.  Now we're going to jump to the next section, the BU guidelines section.

The Work from Anywhere policy states that all BUs have different maturity, context --

A.   I'm sorry, is there a specific exhibit? I just want to make sure I'm looking at what you're looking at.

Q.   Yes, ma'am.  It's the same exhibit, it's just the next section.

A.   Okay, thank you.

Q.   The BU guidelines, that one little part. Let me ask again.

The Work from Anywhere policy states that all BUs have different maturity context and stakeholders that may impact how flexible they can



TIJERINO vs SPOTIFY USA, INC.                    Pages 30..33
Lindsey Goring - 30(b)(6), 08/14/2025

Page 30

be, correct?

A.  Correct, that's what I'm reading.

Q.  Okay.  Under that policy, each business unit may define its own additional guidelines for an employee's Work from Anywhere choice, correct?

A.  Correct.

Q.  Okay.  Employees are expected to review and follow those BU-specific guidelines before submitting a Work from Anywhere application, correct?

A.  Correct.

Q.  The four Eastern District of Louisiana employees are required to comply with their business unit's specific guidelines in addition to the global Work from Anywhere rules, correct?

A.  Yes.  And, in fact, three out of four of them, when they put in their request for Work from Anywhere to move to the Eastern District of Louisiana, did abide by those guidelines.

Q.  Okay.  A business unit can approve or deny an Eastern District's employee's request to change work locations based on those BU-specific guidelines, correct?

A.  Correct.

Q.  Okay.  Let's see.  The next section, it

Page 31

says "Work Mode."  That's the next section.

A.  Yes.

Q.  The Work from Anywhere policy includes a work mode section with at least two options, office mix, meaning you work the majority or full-time from your local office; and office mix -- I mean, home mix, meaning that you work the majority or full-time from your home.

Okay.  So here's the questions:  What does the language from the Work Mode section of Spotify's Work from Anywhere policy -- I mean, that is the language from the Work Mode section of Spotify's Work from Anywhere policy, correct?

MR. MOONEY:

Objection; form.

A.  From what I'm reading, this is the options for work mode, office mix and home mix.

BY MR. TIJERINO:

Q.  Okay.  To your knowledge, each employee is required to select a work mode as part of their employment conditions, correct?

A.  In order to set them up, correct.

Q.  Okay.  Once selected, the chosen work mode determines where the employee is expected to perform the majority of their work, correct?

Page 32

A.  Based off of what they've chosen, that's where they will perform their work tasks.

Q.  Okay.  The Eastern -- Eastern District of Louisiana employees are required to designate a work mode in the same way as all other Spotify employees, correct?

A.  Correct.

Q.  Under the policy, a change in work mode -- for example, from office mix to home mix -- would require company approval, correct?

A.  Correct, mainly to make sure that we can set them up.  So, for example, if someone were to move from home mix to office mix, we want to make sure we have availability for them to come into the office and a desk.

Q.  Okay.  The four employees located in the Eastern District of Louisiana are considered home mix, correct?

A.  Correct.

Q.  All right.  So now we have the Time Commitment section, that would be the next section.

A.  Yes.

Q.  Okay.  So Work from Home Anywhere (sic) policy states, "All work-from-home elections have

Page 33

a 12-month commitment period.  This applies to your mix type and your location.  You should apply three months in advance.

"You do not need to reapply to work mode if you want to remain in the same election after 12 months has passed.  You can follow the process in the employee handbook when you want to switch.  Special exceptions can be made if personal, unforeseen circumstances change, talk to your manager and HRBP."

That's the exact language from the Time Commitment section of Spotify's Work from Anywhere policy, correct?

A.  Yes.

Q.  Okay.  The 12-month commitment period applies to both an employee's work mode and to their work location, correct?

A.  Yes.  Their location within their country.

Q.  Okay.  An employee wishing to change locations or work mode must apply three months in advance, correct?

A.  Yes, although within the U.S., if they wish to move states, we are typically able to accommodate sooner.  Three months is, you know,



TIJERINO vs SPOTIFY USA, INC.                                Pages 34..37
Lindsey Goring - 30(b)(6), 08/14/2025

Page 34

more so for what we need if someone is moving internationally.

Q.   Okay.  Special exceptions to the 12-month commitment can only be made if approved by the employee's manager and HR business partner, correct?

A.   Yes.  If, you know, someone moves to one country and needs to then move back or move to another country, we are able to talk through it and accommodate if there's a personal circumstance.

Within U.S. states, though, they are able to move without the 12-month time commitment as long as they remain within their chosen work mode.

Q.   Okay.  Eastern District of Louisiana employees are required to comply with the same 12-month commitment and approval process for their work location, correct?

A.   Yes.  And all four remote employees in the Eastern District of Louisiana have been present for more than 12 months and could apply to move at any time.

Q.   Okay.  Since employees in the Eastern District of Louisiana are bound by the Work from

Page 35

Anywhere policy, please state for the record what that policy says about the amount of time an employee is required to remain in their elected work location once it had been selected.

A.   We ask that they remain in their elected work location or country for 12 months, and at that point, they are able to apply, per our Work from Anywhere policy, to move to a different country, should they wish.

Q.   Okay.  Sorry if it sounds redundant, but my next question was:  The policy states that the employees are expected to remain in their elected work location for a period of 12 months, correct?

A.   Yes.

Q.   Okay.  So to lock that in, the Work from Anywhere policy also states when an employee can move to a different work location, correct?

A.   Yes, the different work countries in which we have entities.

Q.   Okay.  The same policy also states when an employee may request a change of location, including any required advance notice, correct?

A.   Yes.  And the main reason we ask for both notice and commitment is more from an administration perspective, to make sure that we

Page 36

can set them up for any payrolling and procedures from an HR matter.

Q.   Okay.  Those requirements apply equally to all employees located in the Eastern District of Louisiana, correct?

A.   Yes.

Q.   Okay.  So moving on to the -- let's see if that's a section or not.  I don't think it's a section but it's just more questions.

Okay.  The Work from Anywhere policy contains a moving section, correct?

A.   I am looking at that at the bottom of this page on the exhibit, yes.

Q.   Okay.  That section states that if an employee plans to move to another city, they must first discuss it with their manager, correct?

A.   Yes.  We ask this for time zone reasons. Specifically, we operate under the Eastern Standard Time, and so if someone is moving to a different time zone, we want them to discuss that with their manager, as is the expectation for all four employees remotely in the Eastern District of Louisiana, as well as for many of our employees, is that they work Eastern Standard hours.

Q.   Okay.  That requirement applies even if

Page 37

the move does not involve a change in the employee's work mode, correct?

A.   Correct.

Q.   According to Exhibit E -- let me get Exhibit E in front of me -- all right?

(Exhibit E was marked.)

A.   Yes, I have Exhibit E in front of me.

BY MR. TIJERINO:

Q.   Okay.  Jefferson Parish alone contains six incorporated municipalities, Gretna, Harahan, Kenner, Westwego, Grand Isle, and Jean Lafitte, correct?

A.   I'm not -- I'm not familiar with incorporated municipalities.

Q.   Well, C.  I'm sorry.

A.   C?

Q.   Yes, ma'am.

A.   I have not seen this document before, but the document does say that, yes.

Q.   Okay.  So under the policy, an employee in Jefferson Parish who wanted to move to Kenner or wanted to move from Kenner to Gretna, both within the same parish and without change in work mode, would still be required to first discuss the move with their manager, correct?



TIJERINO vs SPOTIFY USA, INC.                          Pages 38..41
Lindsey Goring - 30(b)(6), 08/14/2025

Page 38

A.   No.  Within the same state they do not. We specifically cite city, as we are a global company, and many other -- many other -- or most other, I would say actually, countries in the world do not have states.  Canada does have territories.

But within the state, they do not need to notify Spotify at all, they simply need to update their address in their system so we know if we need to mail them their W-2.

Q.   But you did -- but you did say earlier on the previous question, like three questions up, that if they -- the policy states if an employee plans to move to another city, they must first discuss it with their manager.  And so --

A.   Yes.  That relates -- and that does relate mostly from a time zone perspective, so wanting to make sure they are able to still work the same time zone.

Q.   All right.  So under the policy -- let's see, so we already answered that one.  Let's see.

So under Spotify's Work from Anywhere policy, the Moving section, an employee located in the Eastern District of Louisiana must first discuss it with their manager before moving from

Page 39

one city to another, correct?

A.   Employees that are currently in the Eastern District of Louisiana, all four remote employees, are able to move within the state freely.  Should they wish to move to a city out of state, we would ask them to discuss that with their manager.

Q.   Well, the same moving section states that even if you plan to stay within the state, the same work mode, but want to move state to state, for example, United States home mix, you still need your manager and HR's approval to do so.

A.   Yes.  It also states that there's no need to reapply your work mode if you are moving to a house within your existing location, parentheses, or your existing state in the U.S.

Q.   Okay. Let's see.  It says, Please follow the work-from-home process in the employee handbook at least three months before the effective date of your relocation per our policy.

That language means the employees need company permission to move out of state, correct?

A.   No.  Because -- well, in the section above, it says that there is no need to reapply

Page 40

for your workload if you are moving houses within your existing location or your existing state in the U.S.

If you wish to move within the state -- I'm sorry, out of state, we ask that you put a request in.  And that is mainly due to administrative items.

So, you know, I think I mentioned previously we are currently registered in 47 out of our 50 states from the payrolling perspective, and we want to make sure that we handle everything properly from a payroll and admin perspective.

Q.   Right.  But the question was that if they move out of state, they need permission to move out of state, correct?

A.   Yes.

Q.   Okay.  The Moving section requires manager approval for moves between cities and manager plus HR approval between states, correct?

A.   Between the U.S. states, yes.

Q.   Okay.  The Work from Anywhere policy also states that an employee cannot request permission to move until after they have been in their elected work location for 12 months, correct?

Page 41

A.   If their elected U.S. -- for their elected country location, yes.

Q.   Well, their work location was the question, not the country.

But in the case of the Eastern District employees, does the elected work location refer to the state of Louisiana, the city where they're based, or both?

A.   It refers to the United States home mix option specifically.  And all four employees in the Eastern District of Louisiana have been in their location, as they elected, in the Eastern District of Louisiana for more than 12 months.

Q.   But, I mean, you did mention -- you did mention earlier that when the employees moved to the Eastern District, that's what they elected; they didn't just elect the United States, but they elected the Eastern -- you know, the city in the Eastern District, correct?

A.   Yes, they elected to live within the U.S. and within the United States, and specifically they chose their home to be in the Eastern District of Louisiana.

Q.   Okay.  So the policy further states that if an employee moves without obtaining the



TIJERINO vs SPOTIFY USA, INC.                                    Pages 42..45
Lindsey Goring - 30(b)(6), 08/14/2025

Page 42

required permission, they're in violation of company policy, correct?

A.   Yes.

Q.   Okay.  That violation rule applies to moves between cities as well as moves between states, correct?

A.   They are able to move within the state of Louisiana freely, within -- if they chose to move to a different state within the U.S., we wish for them to notify us.

Q.   All right.  So the Work from Anywhere policy states that if an employee moves without obtaining the required permission, they are in violation of company policy, correct?

A.   Correct.

Q.   And earlier you testified that employees located in the Eastern District of Louisiana are contractually bound to the terms of their employment contract, correct?

A.   I don't remember if I testified to that specifically, to their employment contracts.

Q.   Okay.  I'm pretty sure that it was in there because, you know, when you become an employee, you have a work -- like a contract you have to sign, correct?

Page 43

A.   We have employee agreements, yes.

Q.   Okay.  And those work-from-home policies are part of it, correct?

A.   Correct.

Q.   Okay.  And so that was the next question, actually.  So the employment contract requires compliance with company policies, including the Work from Anywhere policy, correct?

A.   I'm sorry, can you repeat that one more time.

Q.   Yes, ma'am.

The employment contract requires compliance with company policies, including the Work from Anywhere policy, correct?

A.   Correct.

Q.   Okay.  Therefore, if an Eastern District employee moves without the required permission, that would be a breach of their employment contract, correct?

A.   If they move out of state, it would be a violation of our policy without asking for permission or putting in the request.

Q.   Well, didn't the policy say they have to check with their managers when they move between cities?

Page 44

A.   The approval process involves their manager as well as their human resources business partner.  So if they put in the request, it goes to the manager.  We just typically recommend that before putting in a request, that you talk with your manager just so they're not surprised when they get the request.

Q.   Okay.  So let's see.  Let me see.  That's Exhibit E.  All right.

So the Work from Anywhere policy applies to the employees located in the Eastern District of Louisiana, correct?

A.   Yes, as well as all of our employees.

Q.   Exhibit E includes several incorporated cities within the Eastern District of Louisiana, including, but not limited, to Kenner, Harahan, Gretna, Westwego, Lafitte, Grand Isle, and Jefferson Parish, correct?

A.   I have not seen this particular document before, but that is what is written on the page.

Q.   Okay.  And under the work from home -- Work from Anywhere policy, the Moving section, an employee must first discuss with their manager any plans to move from one city to another, correct?

A.   Yes, as well as saying, if you are

Page 45

moving within your existing state, that you do not need to apply or reapply.

Q.   Well, would that be two separate things, the work mode or the location?

A.   Can you clarify what you mean by that?

Q.   The -- let me see.  The Work from Anywhere policy Moving section, it says that there's no need to reapply to your work mode when moving houses within your existing location.

A.   Correct.  And all four remote employees in the Eastern District of Louisiana are home mix, so should they move anywhere within the state of Louisiana, given that we do not have an office there, they would remain home mix and are able to do so without reapplying.

Q.   Okay.  So it says if you plan to move to another city, region, or change your work mode, please discuss with your manager.  And it says there's no need to reapply for your work mode if you're moving houses within your existing location; but, however, you still need to update your work date accordingly.  So even if you plan to stay within the same work mode but want to move state to state, you will still need manager/HR's approval to do so.



TIJERINO vs SPOTIFY USA, INC.                           Pages 46..49
Lindsey Goring - 30(b)(6), 08/14/2025

Page 46

Okay.  All right.  Let's see.  If an Eastern District employee moved from one city in Exhibit E to another city in Exhibit E without obtaining the required permission, would that be a violation of Spotify's policy, a breach of their employment contract?

MR. MOONEY:
        Objection; form.

A.    The four remote employees in the Eastern District of Louisiana are able to move anywhere within the state of Louisiana without Spotify's permission.

BY MR. TIJERINO:

Q.    All right.  Let's see.  Would a violation of Spotify's policy and a breach of the employment contract of that nature, would it result in termination of employment?

MR. MOONEY:
        Objection; form.

A.    Not necessarily.  There are many different forms in which we might address a policy violation.  While termination could be one of them, that is not the only means that we use if someone were to violate one of our policies.

Page 47

BY MR. TIJERINO:

Q.    All right.  Let's see.  I guess, let's see.  Your Work from Anywhere policy requires the Eastern District employees to get approval before moving from one city to another, right?

A.    If in a different state, a U.S. state.

Q.    All right.  Let's see.  So to summarize like I guess this whole section, your Work from Anywhere policy, it shows how employees could elect to move into the Eastern District; once there, it controls where they can move, when they can move, whether they can move at all, and sets consequences, including potential termination if they move without permission, correct?

MR. MOONEY:
        Objection; form.

A.    The policy allows for employees to understand, including the four remote employees in the Eastern District of Louisiana, where they can elect to live and work.
        The four employees in the Eastern District of Louisiana have elected to work within the Eastern District of Louisiana.  All of them have been in the Eastern District of Louisiana for more than a 12-month period and could move within

Page 48

the state of Louisiana without permission or outside of the state of Louisiana within the U.S., should they put in a request.
        The way that we discipline employees for policy violation does not necessarily always result in termination.

BY MR. TIJERINO:

Q.    Okay.  Let's go to Exhibit B, please.
        (Exhibit B was marked.)

A.    Yes, I have it in front of me.

BY MR. TIJERINO:

Q.    Okay.  So Exhibit B is part of Spotify's Work from Anywhere policy, correct?

A.    It looks to be that way, yes.

Q.    Okay.  The Travel section -- let's see.  That section states that if a home mix employee wants to work from a location other than their primary office or home, they must first secure manager approval, correct?

A.    As relates to -- for business travel, yes.

Q.    Okay.  The policy also states -- or also requires that the location and duration of time be compliant from a tax and insurance perspective, correct?

Page 49

A.    Yes.

Q.    Okay.  The same section states that all travel must be in compliance with the company's travel policy and travel guidelines, correct?

A.    Yes, all business travel.

Q.    Okay.  The policy further states that internal users are restricted from using Spotify enterprise assets or performing work duties in certain locations, correct?

A.    Correct.  There's certain locations in which there are cybersecurity risks.

Q.    Okay.  And employees must refer to the company's Work from Anywhere -- Work from Another Location policy to identify locations where work is restricted, correct?

A.    Yes.

Q.    Okay.  These restrictions apply equally to employees located in the Eastern District of Louisiana, correct?

A.    They apply to all employees, inclusive of the four remote employees in the Eastern District of Louisiana.

Q.    Okay.  So to summarize, under this policy, an Eastern District employee must obtain manager approval, meet tax and insurance



TIJERINO vs SPOTIFY USA, INC.                          Pages 50..53
Lindsey Goring - 30(b)(6), 08/14/2025

Page 50

compliance, and avoid restricted locations before working from anywhere other than their approved home or office location, correct?

MR. MOONEY:

Objection; form.

A.   For any business travel, regardless of where an employee is located, due to there being a business cost, they do need to obtain manager approval and abide by their travel policy or guidelines.

The location restrictions are very specific countries, such as Russia and China, in which there are cybersecurity concerns.

BY MR. TIJERINO:

Q.   Okay.  Moving right along.  Please let's look at Exhibit C.

(Exhibit C was marked.)

A.   Yes, I have it in front of me.

BY MR. TIJERINO:

Q.   This is the Submit a Work from Anywhere Request.  So all the questions are tied to employees who reside in and perform work in the Eastern District of Louisiana to comply with Docket 76.  So let's see, manager discussion requirement.

Page 51

For Spotify employees who reside in and perform work in the Eastern District of Louisiana, if they plan to change work locations, are they required to first discuss any change and any constraints with their manager?

A.   I'm sorry, are you referencing a specific portion within Exhibit -- within Exhibit C?  I just want to make sure I'm looking at the right place.

Q.   The Work from Anywhere Request.

A.   Okay.  Could you repeat the question, please.

Q.   Yes, ma'am.

So for Spotify employees who reside in and perform work in the Eastern District of Louisiana, if they plan to change work locations, are they required to first discuss the change and any constraints with their manager?

A.   If they wish to move within the state of Louisiana, they do not need to discuss this with their manager.  If they wish to move outside the state, they do -- we ask that they discuss it with their manager before submitting their request.

Q.   Okay.  For those Eastern District of Louisiana employees, can those constraints include

Page 52

time zone requirements, travel requirements, or other role-specific obligations that require them to remain in this district?

MR. MOONEY:

Objection; form.

A.   We do not require these four employees to remain in the district.  They chose to live in the district, the Eastern District of Louisiana, to be specific.  We ask that these four remote employees work in the Eastern Standard time zone.

And at times, for certain employees, we do ask that they travel to our New York City headquarters in which they are based -- or we are based.

BY MR. TIJERINO:

Q.   All right.  For Spotify employees who reside in and perform work in the Eastern District of Louisiana, does Spotify require them to commit to their elected work mode and location in this district for at least 12 months before applying for a change?

A.   We ask --

MR. MOONEY:

Objection.  Objection; form.

A.   We ask that employees commit to their

Page 53

work mode and their overall country location, which is the U.S.  All four employees currently in the Eastern District of Louisiana elected to move to or live in the Eastern District of Louisiana, and all of them have been there for well over 12 months.

They are able to elect to move or request to move anywhere in the U.S. at this time, and there's no reason why we would deny said request for all four current remote employees in the Eastern District of Louisiana.

BY MR. TIJERINO:

Q.   Okay.  Well, that was my -- you answered my next question, I believe, which was:  For those employees, can applications to change work mode locations be made before the 12-month period, only if both the manager and the HRBP approve an exception?

A.   For them, they've all been within the Eastern District of Louisiana for I believe years at this point.  Should they put in a request tomorrow to move, there is no reason why we would deny the request for any of the four remote employees in the Eastern District of Louisiana.

Q.   All right.  Let's see.  Number 5, for



TIJERINO vs SPOTIFY USA, INC.                                          Pages 54..57
Lindsey Goring - 30(b)(6), 08/14/2025

Page 54

Spotify employees who reside in and perform work in the Eastern District of Louisiana, do all work location change requests require approval by both the manager and HRBP?

A.    Should they wish to move in the state of Louisiana, they do not need to put in a request. Should they put in -- or should they wish to move out of state, they would need to put in a request, and there is no reason we would deny a request for them to move outside the state of Louisiana.

Q.    All right.  So in the Work from Anywhere policy, for those employees in the director level or higher roles, is business unit CxO approval also required for location change?

A.    Yes.  That is in direct relation, as director-plus folks have a tax implication and there's a tax implication to the company, so it does require additional approvals.

Q.    Okay.  For those employees, if the location change application is denied, are they free to apply for another role that may allow the desired work mode or location?

A.    There's no reason why we would deny any of the four within the Eastern District of Louisiana their work mode request change; however,

Page 55

it sounds like you're asking me to maybe speculate.  If I were to speculate, in theory, they could apply to a different role that would have different work mode accommodations.

Q.    I'm not speculating.  If you do look at it, it's highlighted.  It's the Submit a Work from Anywhere Request, the bottom section.  It says, "If your application is denied, you're free to apply for another role at Spotify that hopefully allows for your desired work mode and location preference."

A.    Yes.  In general, yes.  In relation to the four remote employees of the Eastern District of Louisiana, it could -- there's no reason why we would deny them.  But, yes, I see it written that they're able to -- free to apply to another role at Spotify.

Q.    Let's see.  The Business Unit Guideline, is that that little section underneath that?

A.    Yes.

Q.    It says, For Spotify employees who reside in and perform work in the Eastern District of Louisiana, does each business unit set time zones, location, and eligibility rules for home mix/office mix roles?

Page 56

A.    Yes.

Q.    Okay.  For those employees, once they file their BU-specific guidelines, and if I'm clear, are they required to ask their manager for clarification?

A.    They are not required to ask for clarification.  If there's clarification that they wish to discuss, they're always more than happy or welcome to ask.

Q.    Okay.  So for Spotify employees who reside in and perform work in the Eastern District of Louisiana, can they only move to a U.S. state where Spotify is a registered legal entity, as listed in the global Work from Anywhere tax approval?

A.    We allow regional moves.  So currently we are registered within, for instance, Canada as well.  So typically I would say most move within the U.S.

Q.    But the question was:  Can they only move to a U.S. state where Spotify has registered a legal entity as listed in the global Work from Anywhere tax approval?

A.    Well, the four remote employees in the Eastern District of Louisiana have all been within

Page 57

the U.S. and home mix for over 12 months.  They could apply to other country entities within the region.

Q.    Let me rephrase the question.
        Can the Eastern District employees move to a state where you're not registered for tax approval?

A.    For the three states in which we are not registered, typically in the past we do register within the state and we would, it just requires extra effort and some extra paperwork on our part.  So they can, there's just a larger leeway before we're set up for them to move.

Q.    But in other words, they can't until you set it up, correct?

A.    They can't move until we set it up. They can request.

Q.    Okay.  So -- okay.  For those employees -- let's see.
        For those employees, can moving between regions occur only by applying for a new role in the desired region?

A.    Not necessarily.

Q.    Because right after what I had highlighted it says, When moving to a new country.



TIJERINO vs SPOTIFY USA, INC.                                Pages 58..61
Lindsey Goring - 30(b)(6), 08/14/2025

Page 58

When you move from one country to another, please keep in mind that you're effectively ending your employment in the current country and starting a new one in the country you're moving to.

A.   From a payrolling and benefits perspective, yes.  So you are still employed by Spotify, but for instance, Spotify USA has a different payrolling and benefits provider than Spotify Canada.

So you are ending the payrolling employment with Spotify USA and then would then be employed with the payrolling vendor and benefits within Spotify Canada.

Q.   I apologize, I was looking at the wrong section.  It's actually the highlighted section.  It would be at the very top, the third line.

It says, Moves between regions can only happen while applying for a new existing role in that desired region.

Am I reading that correctly?

A.   I believe it means between like Europe and Americas.

Q.   Right.  That's what I was asking, between regions.

A.   Yes.  So we do ask that, you know, for

Page 59

instance, they are able to apply within the Americas region.  Should they wish to apply to Europe, because most of our roles within the Americas operate under Eastern Standard time zone, it would be very difficult to then perform the role in Europe where there's not a heavy time zone overlap.

Q.   Okay.  Let's move to the bottom section, please, U.S. State-to-State Moves.

A.   Yes.

Q.   Okay.  So all questions are tied to employees who reside in the -- reside and then perform work in the Eastern District of Louisiana to comply with Docket 76.  So let's see.

It says, Review and approval requirements.  For Spotify employees who reside in and perform work in the Eastern District of Louisiana, the U.S. State-to-State Move policy requires them to review the U.S. tax approval guidelines and business unit guidelines before moving to a new state, correct?

MR. MOONEY:
Objection; form.

A.   We ask that all employees, whenever they are submitting a Work from Anywhere request,

Page 60

review our guidelines so that they understand our policy.

BY MR. TIJERINO:

Q.   Okay.  Well, that was the question, if they're required to review them.

Okay.  For those Eastern District of Louisiana employees, even if their current work mode is United States home mix, must they submit a new Work from Anywhere request before moving to another state?

A.   Yes.  And that's primarily due to administrative payrolling reasons.  We want to make sure that we are able to accommodate for any admin overhead should they move from one state to another.

Q.   Okay.  For Spotify employees who reside in and perform work in the Eastern District of Louisiana, must that Work from Anywhere request be approved by both the employee's manager and the HRBP, human resources business partner, before the move?

A.   Yes.

Q.   Okay.  For those employees, once their request is approved, must they update the primary home address in Workday?

Page 61

A.   Yes.  That is where we, for instance, send W-2s, and we want to make sure that we send to the proper address.

Q.   Okay.  For those employees, does updating the primary home address in Workday automatically prompt and update the state tax withholdings for the new state?

A.   I am not fully familiar with the inner workings of our payroll team and their tax.  But from my understanding, they use the Workday address to also account for employee taxes.

Q.   It says here in the policy, right there in the middle, it says, "Updating your primary home address in Workday will then automatically prompt you to update your state tax withholding as needed upon your relocation to your new state."

A.   Yes.  State tax withholding, yes.  I'm sorry, I thought you meant for payroll specifically.

Q.   No, like everything -- all the questions come from this section.

A.   Yep.

Q.   Okay.  Let's see.  We only have two more pages to go.  We're almost done.

Okay.  For Spotify employees who reside



Page 62

in and perform work in the Eastern District of Louisiana, for all inter-U.S. moves, must they sign a document acknowledging the change in work mode and/or address?

A.   I'm sorry, can you repeat that question.

Q.   Yes, ma'am.

For Spotify employees who reside in and perform work in the Eastern District of Louisiana, for all inter-U.S. moves, must they sign a document acknowledging the change in work mode and/or address?

MR. MOONEY:

Objection; form.

A.   If they choose to move to a different state in the U.S., we would have them acknowledge that they've done so through a document within Workday, our HR system.

BY MR. TIJERINO:

Q.   Okay.

A.   If they were to move to a new country, they were to sign a new employee agreement.

Q.   Okay.  This is about -- let's see.  I'm trying to see where we're at.

Okay.  For Spotify employees who reside in and perform work in the Eastern District of

Page 63

Louisiana, if their job duties require them to work from a Spotify office, must they obtain office access through a formal ticket process when relocating to another U.S. office?

MR. MOONEY:

Objection; form.

A.   We do not have an office in the Eastern District of Louisiana or the state of Louisiana. Should they wish to, let's say, relocate to New York City and work out of the New York City office, when they work -- if they were to apply to that work mode, that would then let us know that they wish to access and work out of the New York City office.

BY MR. TIJERINO:

Q.   Okay.  Yeah, that's just the two bottom sentences in the statement.  It says, "If I'm moving from another U.S. office, how do I get access?  If you need access to your new office or have any questions about our office spaces, please submit a ticket."

That's where that question came from, the office access.

Okay.  And then here's just a few more additional questions.  Let's see.  So for Spotify

Page 64

employees who reside in and perform work in the Eastern District of Louisiana, under the Work from Anywhere policy, does each employee elect a work location that must be approved by the company, correct?

MR. MOONEY:

Objection; form.

A.   Can you clarify what you mean by that?

BY MR. TIJERINO:

Q.   Okay.  So the employees under the policy, right, the Work from Anywhere policy, when they elect a work location, that must be approved by the company, correct?

A.   There's many locations that are already available.  So, for instance, employees can elect to live in our U.S. states, they can elect to live in certain countries.

So part of the BU guidelines and also the tax guidelines is to let folks know what is already set up from an entity perspective.

Q.   But it must be approved by the company, correct?

A.   By their manager and the HRBP.

Q.   Okay.  That approved work location can be their employee's residence if the company

Page 65

approves it, correct?

A.   As part of the Work from Anywhere policy with the manager and HRBP approving, correct.

Q.   And the policy requires employees to obtain advanced approval before changing their elected location, correct?

MR. MOONEY:

Objection; form.

A.   We ask that all employees, should they be moving to a different U.S. state, country, or change in work mode, put in a Work from Anywhere request that will then be approved by their manager and HR.

BY MR. TIJERINO:

Q.   The policy further states that if an employee moves to a different location without approval, their continued employment may be affected, correct?

A.   If they were to move to a place in which we do not have an entity, like a country, we would not have a way to payroll them.

Q.   Well, I mean like without approval, like if you just moved somewhere without approval to a different location.

A.   If you were to --



TIJERINO vs SPOTIFY USA, INC.                                    Pages 66..69
Lindsey Goring - 30(b)(6), 08/14/2025

Page 66

Q.   Uh-huh.

A.   If you were to move to a U.S. state without different approval, there are many means in which we would discuss and potentially take disciplinary actions, in many cases, a written warning.

Q.   Okay.  So when an employee elects the Louisiana location as a company -- the company reviews and approves that election before that employee can work there, correct?

A.   Yes.  And three out of four employees elected and put in a request and elected to work out of the Eastern District of Louisiana.

Q.   And then once approved, that Louisiana location is recorded in the company system as the employee's official work location, correct?

A.   Yes.

Q.   Okay.  And then the company's approval of that Louisiana location is a condition of the employment (sic) being able to work from that location, correct?

MR. MOONEY:
    Objection; form.

A.   We are able to employ the person in the Eastern District of Louisiana, or the four

Page 67

employees, because we are registered, and we need to make sure we are registered within the state in order to payroll them properly.

BY MR. TIJERINO:

Q.   But the thing is, is that you just said that you have to review them, you have to approve it.  And after you select a condition of them being able to work here, you said you have to review it and approve it, correct?

A.   Yes.

Q.   Okay.  So to summarize, the company requires the employees to elect the work location, reviews and approves the election, records it in the system, and enforces the restriction on changing that location without permission, correct?

A.   They are allowed to elect for what you said and move there once they've obtained the permission --

Q.   If the --

A.   Yes.

MR. MOONEY:
    Were you finished?

THE WITNESS:
    Yes.

Page 68

MR. TIJERINO:
    I'm sorry, I'm sorry.

MR. MOONEY:
    That's okay.  I think everyone has been very good about that.

MR. TIJERINO:
    I apologize.  It's been going very good so far.  We're almost done.

BY MR. TIJERINO:

Q.   So this final set of questions is aimed at understanding why Spotify maintains employees in the Eastern District of Louisiana.

Now, I'm not asking about product features or infringement, I'm just focusing strictly on the condition of employment, the roles and responsibilities of these employees, and how their work connects to local business operations.

This information is directly relevant to venue under Docket 76 because it helps establish whether Spotify's presence here serves an ongoing business purpose, not just incidental or remote work.  And then all I have is like a couple more questions and we're done.

Okay.  So for Spotify employees who reside in and perform work in the Eastern District

Page 69

of Louisiana, do any of their assigned responsibilities involve engaging with local content creators, such as musicians, studios, or other creative professionals?

A.   For the four remote employees in the Eastern District of Louisiana, Spotify does not require them to engage in local client work as relates to the Eastern District of Louisiana.

Q.   Okay.  For those employees, do any of their job duties involve like in-person or virtual meetings with such local content creators?

A.   No.  Spotify does not require them to have virtual or in-person meetings with local content creators.

Q.   For those employees, do any of their job duties involve assisting local content creators in setting up or maintaining or optimizing their Spotify tools or services?

A.   No.

Q.   All right.  Let's see.  Community and market presence.

For Spotify employees who reside in and perform work in the Eastern District of Louisiana, do any of their assignment responsibilities involve community engagement, outreach, or



TIJERINO vs SPOTIFY USA, INC.                                    Pages 70..73
Lindsey Goring - 30(b)(6), 08/14/2025

Page 70

relationship-building within the local music or creative industry?

A.   No.  Spotify does not require them that specific to the Eastern District of Louisiana.

Q.   All right.  For those employees, do any of the -- their assignment responsibilities involve attending or participating in local events, conferences, or networking functions on behalf of Spotify?

A.   Specific to the Eastern District of Louisiana?

Q.   Yes, ma'am.

A.   Specifically to the Eastern District of Louisiana, no, Spotify does not require that of them.

Q.   Okay.  For those employees, do any of their assignment responsibilities involve identifying, recruiting, or on-boarding new local content creators or partners?

A.   No, Spotify does not require that specifically to the Eastern District of Louisiana.

Q.   All right.  Let's see.  For Spotify employees who reside in and perform work in the Eastern District of Louisiana, does Spotify require them to remain in the district because

Page 71

their role involves supporting, maintaining, or engaging with local content creators or industry partners?

A.   No, Spotify does not require that as relates to the Eastern District of Louisiana.

Q.   All right.  And the final question:  For those employees, does the company need a local engagement factor in the approval or denial of any Work from Anywhere or relocation request?

A.   Could you repeat the question, please.

Q.   Yes, ma'am.

For those employees, does the company need local engagement factors in the approval or denial of any Work from Anywhere or relocation requests?

A.   Could you clarify what you mean by local -- local relocation factors?

Q.   It was local engagement.

A.   Oh, engagement.

Q.   Yes, ma'am.

A.   Can you clarify what you mean by that?

Q.   Yeah.  Like basically I got this off of the Submit a Work from Anywhere Request where it says -- let's see, I've got to find it here.

Okay.  It says here, if you want to read

Page 72

along with me, so the middle section on the --

MR. MOONEY:

I'm sorry, which exhibit were you looking at?

MR. TIJERINO:

I was looking at Exhibit C.

MR. MOONEY:

Thank you.

MR. TIJERINO:

Yes, sir.

BY MR. TIJERINO:

Q.   Under Submit a Work from Anywhere Request, there's like the highlighted section that's like in the middle.  So basically it says -- I just read a couple sentences to get to the point from the highlighted section.

So it says if you're working remotely you still might have to travel off-site and in-person collaboration on important projects or other business needs.  This travel might be on short notice.

It's up to you to research and understand the potential tax implications for your decision, given the personal nature of finance, taxes, et cetera.  If you're having problems with

Page 73

your performance or forming relationships, changing your work location may not be the best for you or Spotify.

So that's where that question came from, because it says, If you're having problems with your performance or forming relationships, change in your work location might not be in the best interest.

So that's why I asked, you know, when they do local engagement, is that a factor of denial of changing your location?  Because that's what it says right there.  That's where that question came from.

A.   Got it, thank you.

So performance can be a factor in approving or denying someone's work mode.  They need to be in good standing.  However, for the four employees in the Eastern District of Louisiana, they are in good standing.

They can request a work mode change, and there's no reason why we would deny their work mode change, should they wish to relocate to a different state.

Q.   Okay.  And what is the -- if I'm allowed to ask, what is the forming relationships part of



Page 74

it?

A.   So this refers more to when we launch the policy, as we were previously focused on in-person -- pre-COVID in-person work only, so out of the New York City office.  So if someone in the three out of four employees did elect to move away from the New York City office and to the Eastern District of Louisiana, for some -- you know, remote work might be a bit more difficult for some teams, you know; for example, Employee Number 1, their team is entirely New York-based.

Those are considerations that we would want all employees to make when electing to move away from one of our hub offices.

MR. TIJERINO:

Okay.  Well, thank you very much, Ms. Lindsey.  It was a pleasure interviewing you.

And Mr. Mooney, you've got the show.

THE WITNESS:

Thank you.

MR. MOONEY:

I do want to thank you on the record also, Mr. Tijerino, for steering clear of the personally identifiable

Page 75

information, and Spotify and the employees do appreciate that.

I do have some questions, but maybe we can just go off the record for a second, I'll check with the witness as far as state of hunger, take a quick break, or see if we should do that now or take a quick lunch break.

Can we take five minutes?

MR. TIJERINO:

Absolutely.

(A break was taken.)

MR. MOONEY:

Before I begin, there have been some exhibits that were sent to both of you, more importantly, Mr. Tijerino.

Did you receive those, Mr. Tijerino?

MR. TIJERINO:

Not yet -- well, let me check.

MR. MOONEY:

They were emailed to you.  It's basically the interrogatory response and documents that we had produced, including some that you have the excerpts of in your exhibits.

Page 76

Let's make sure you have those.

MR. TIJERINO:

Is that 18 PDFs or something?

MR. MOONEY:

Yes.  We'll start with Tab 3 or Exhibit 3, Tab 6 or Exhibit 6.

MR. TIJERINO:

Let me open them on my computer.

MR. MOONEY:

Sure.

MR. PROVINE:

Mr. Tijerino, they're from me from a platform called Kiteworks.  That's just the system we use to send large files securely.

MR. TIJERINO:

Okay.  Let me see.

(Discussion off the record.)

EXAMINATION

BY MR. MOONEY:

Q.   Ms. Goring, as you know, my name is Kyle Mooney, and I am an attorney with Morrison & Foerster who represents Spotify in this litigation, and I have a few follow-up questions for you.

Page 77

Q.   First question, what is your current position at Spotify?

A.   My current position is senior global HR program manager.

Q.   How long have you held that position?

A.   Roughly a year and a half.

Q.   What are your responsibilities as senior global HR program manager at Spotify?

A.   I oversee various employee and contingent worker-related programs, such as Work from Anywhere, our recruitment programs, and contractor programs as well.

Q.   And so am I correct that you have responsibilities that relate to Spotify's Work from Anywhere policy?

A.   Correct.

Q.   And do any of your responsibilities relate to relationships with vendors in connection with Spotify's recruiting efforts?

A.   Yes.

Q.   When did you begin working at Spotify?

A.   November of 2015.

Q.   Do you know how many employees Spotify has globally?

A.   Roughly 7,400.



TIJERINO vs SPOTIFY USA, INC.                              Pages 78..81
Lindsey Goring - 30(b)(6), 08/14/2025

Page 78

Q.   Do you know how many employees Spotify has in the United States?

A.   Roughly 3,500.

Q.   Where is Spotify USA headquartered?

A.   Our New York City office in 4 World Trade.

Q.   Do you know how many Spotify employees work in the greater New York City region?

A.   Roughly 1,500.

MR. MOONEY:
     We've marked as Exhibit 27, Mr. Tijerino, a document titled Parish Information.

MR. TIJERINO:
     All right.

(Exhibit 27 was marked.)

BY MR. MOONEY:

Q.   You got a copy of Exhibit 27?

A.   Yes.

MR. TIJERINO:
     Correct.

BY MR. MOONEY:

Q.   Do you recognize Exhibit 27?

A.   Yes.

Q.   What is it?

Page 79

A.   It is a map of the Eastern District of Louisiana from the court website.

Q.   And do you have an understanding as to what is shown in color on this map, Exhibit 27?

A.   Those are the different territories or towns of the Eastern District of Louisiana.

Q.   Do you have an understanding as to what is shown in the grayed-out portions of the state of Louisiana?

A.   That is the rest of the state of Louisiana excluding the Eastern District.

Q.   Does Spotify have any employees currently working in the state of Louisiana?

A.   Yes, four remote employees in the Eastern District of Louisiana.

Q.   Do the four Spotify employees in Louisiana work out of their homes?

A.   Yes.

Q.   Is it acceptable if I refer to the four Spotify employees in Louisiana as the Louisiana remote employees?

A.   Yes.

Q.   Am I correct that in certain Spotify documents that have been produced in this case, the Louisiana remote employees are referred to as

Page 80

Employees 1, 2, 3, and 4?

A.   Yes.

Q.   Why is that?

A.   Privacy reasons.  We don't wish to disclose their personal information.

Q.   Do you, though, know the identity of each of the Louisiana remote employees?

A.   Yes.

Q.   Did you speak to anybody other than attorneys to prepare for today's deposition?

A.   Yes.

Q.   Who?

A.   I spoke with Matthew Folsom, who's our head of real estate.  I spoke with the four human resources business partners, four HRBPs for Employees 1, 2, 3, and 4.

Q.   What is Matthew Folsom's position?

A.   He is our head of real estate.

Q.   What are Mr. Folsom's responsibilities?

A.   He oversees all deals as relates to our office -- office space and leasing globally.

Q.   Generally, what was the subject of your discussion with Mr. Folsom?

A.   Whether or not we have or have ever had office space in the Eastern District of Louisiana

Page 81

or the state of Louisiana.

Q.   Did you speak to anybody with responsibility relating to the accounting and tax business unit?

A.   Yes.

Q.   Who?

A.   Katie Christiansen, the HR business partner for accounting.

Q.   And what are her responsibilities?

A.   She works with the org leader to determine job descriptions as well as Work from Anywhere eligibility for the org as well.

Q.   Does Ms. Christiansen oversee work location and Work from Anywhere issues for employees to the accounting and tax business unit?

A.   Yes.

Q.   Does that include Employee 1?

A.   Yes.

Q.   What was the general topic of your discussion with Ms. Christiansen?

A.   Regarding Employee Number 1's eligibility under our Work from Anywhere policy, that they had been previously employed out of New York City and then elected to then move to the Eastern District of Louisiana, as well as that



TIJERINO vs SPOTIFY USA, INC.                              Pages 82..85
Lindsey Goring - 30(b)(6), 08/14/2025

Page 82

they are -- there's no reason why we would deny should they put in a request to move anywhere else.

Q.    Did you speak to anybody with responsibility relating to the audiobooks business unit?

A.    Yes.

Q.    Who?

A.    Logan Carr, who is our HR business partner for that org.

Q.    What are Ms. Carr's responsibilities?

A.    She works with the org leaders to create job descriptions as well as determine Work from Anywhere eligibility for the org as well.

Q.    Does Ms. Carr oversee work location and Work from Anywhere issues for employees in the audiobooks business unit?

A.    Yes.

Q.    Does that include Employee 2?

A.    Yes.

Q.    What was the general subject of your discussion with Ms. Carr?

A.    Employee Number 2 and how they came with us.  They came through an acquisition and at that time had already elected to work out of the

Page 83

Eastern District of Louisiana, as well as should they put in a request to move to another location, we would not have zero reason to deny that.

Q.    What do you mean, you "would not have zero reason to deny that"?

A.    I'm sorry, that we have no reason to deny that.

Q.    Did you speak with anybody with responsibility related to the subscriptions and markets business unit?

A.    Yes.

Q.    Who?

A.    Andrew Cini, who is the HR business partner for the subscriptions and markets work.

Q.    What are Mr. Cini's responsibilities?

A.    He works with org leaders to help with job descriptions, as well as determine the Work from Anywhere eligibility for that work.

Q.    Does Mr. Cini oversee work location and Work from Anywhere issues for employees in the subscriptions and markets business unit?

A.    Yes.

Q.    Does that include Employee 3?

A.    Yes.

Q.    What was the general subject of your

Page 84

discussion with Mr. Cini?

A.    Their -- Employee Number 3's work history, that they had initially been hired into New York City and then elected under our Work from Anywhere policy to move to the Eastern District of Louisiana.  We also discussed that there would be no reason for us to deny a request, should Employee 3 wish to move elsewhere.

Q.    Did you speak with anybody with responsibility related to the advertising business unit?

A.    Yes.

Q.    Who?

A.    Jamie Schonfeld.

Q.    And what are Ms. Schonfeld's responsibilities?

A.    Ms. Schonfeld oversees and works with the org leaders to help create job descriptions as well as help determine Work from Anywhere eligibility for the ads business unit.

Q.    Does Ms. Schonfeld oversee work location and Work from Anywhere issues for employees in the advertising business unit?

A.    Yes.

Q.    Does that include Employee 4?

Page 85

A.    Yes.

Q.    What was the general topic of your discussion with Ms. Schonfeld?

A.    That Employee 4 had initially started within New York City for their job and then elected to move to the Eastern District of Louisiana under our Work from Anywhere policy, and that they, should they put in a request, there would be no reason why we would deny their request to move elsewhere.

(Exhibit 6 was marked.)

BY MR. MOONEY:

Q.    Could you turn to Exhibit 6.

A.    Yes, I have it in front of me.

Q.    Do you recognize Exhibit 6?

A.    Yes.

Q.    What is Exhibit 6?

A.    A redacted version of Employee 1's offer letter from their initial hiring into New York City.

Q.    In looking at Exhibit 6, there are two pages, appear to be a letter and then several additional pages that are titled Appendix A.

What's your understanding of the entirety of Exhibit 6?



TIJERINO vs SPOTIFY USA, INC.                                   Pages 86..89
Lindsey Goring - 30(b)(6), 08/14/2025

Page 86

A.   That the first portion is their offer letter and that Appendix A contains the different clauses as related to their conditions of employment that they sign onto.

MR. MOONEY:

For the record, Exhibit 6, there's production numbers SPOTIFYUSA_VENUE_000001 through 000011.

BY MR. MOONEY:

Q.   Ms. Goring, could you turn to page 2 of Exhibit 6.

A.   Yes.

Q.   Do you see the name Katarina Berg?

A.   Yes.

Q.   Who is Katarina Berg?

A.   She was our chief HR officer and was the chief HR officer at the time.

Q.   Does that appear to be Ms. Berg's signature on page 002 of Exhibit 6?

A.   Yes.

Q.   Could you turn to page 008.  I'm using the numbers on the bottom right, production numbers, page 008.

A.   Yes.

Q.   Do you recognize the signature on

Page 87

page 008 of Exhibit 6?

A.   Yes.

Q.   Whose signature is that?

A.   Katarina Berg's.

(Exhibit 7 was marked.)

BY MR. MOONEY:

Q.   Would you turn to Exhibit 7.

A.   Yes.

Q.   Do you recognize Exhibit 7?

A.   Yes.

Q.   What is Exhibit 7?

A.   It is the employee agreement of Employee Number 1 when they chose to move to the Eastern District of Louisiana.

Q.   If you'll turn to page 0018 of Exhibit 7.

A.   Yes.

Q.   Do you recognize the signature on page 0018 of Exhibit 7?

A.   Yes.

Q.   Whose signature is that?

A.   Katarina Berg's.

Q.   Could you turn back to the first page of Exhibit 7, please.

A.   Yes.

Page 88

Q.   Under the first heading, Duties and Place of Work, there's a sentence that reads, "The employee shall be employed as (contents redacted) with a start date of December 1, 2022."

Do you see that?

A.   Yes.

Q.   Has Employee 1 worked and resided in the Eastern District of Louisiana since December of 2022?

A.   Yes.

Q.   What business unit is Employee 1 part of?

A.   The accounting business unit.

Q.   Is Employee 1 in good standing with Spotify?

A.   Yes.

Q.   Has Employee 1 been in good standing with Spotify since they began with the company?

A.   Yes.

Q.   Does Spotify require Employee 1 to work in the Eastern District of Louisiana?

A.   No.  In fact, their whole immediate team is based out of New York City, and an exception was essentially made for them to work out of the Eastern District of Louisiana.

Page 89

Q.   Has Employee 1 always worked in the Eastern District of Louisiana?

A.   No.  They started off in New York City and then elected to move there under our Work from Anywhere program.

Q.   So then why is Employee 1 currently working in the Eastern District of Louisiana?

A.   By their own choice and their own request.

Q.   And where is Employee 1's team based?

A.   They are based in our New York City office.

Q.   Is there any reason that Employee 1 needs to continue performing her work for Spotify in the Eastern District of Louisiana?

A.   No.

Q.   Does Employee 1 require Spotify's approval to move outside of the Eastern District of Louisiana to somewhere else in the state of Louisiana?

A.   No.

Q.   Has Employee 1 ever been denied a request to relocate?

A.   No.

Q.   Is there any reason that Employee 1



TIJERINO vs SPOTIFY USA, INC.                                     Pages 90..93
Lindsey Goring - 30(b)(6), 08/14/2025

Page 90

could not relocate to and work from another state?

A.   No.

Q.   Could Employee 1 perform all of their current responsibilities for Spotify if they were to relocate outside the state of Louisiana?

A.   Yes.

(Exhibit 8 was marked.)

BY MR. MOONEY:

Q.   Would you look at Exhibit 8, please, which bears production numbers SPOTIFYUSA_VENUE_0020 through 0026.

A.   Yes.

Q.   Do you recognize Exhibit 8?

A.   Yes.

Q.   What is Exhibit 8?

A.   It's the redacted version of employee agreement for Employee Number 2.

Q.   Would you turn to page 0026 of Exhibit 8.

A.   Yes.

Q.   Do you recognize the signature that appears on the bottom left-hand side of page 0026 of Exhibit 8?

A.   Yes.

Q.   Whose signature is that?

Page 91

A.   Katarina Berg's.

Q.   Would you turn back to the first page of Exhibit 8, and under the Duties and Place of Work heading on page 1, there's an indicated start date of June 22, 2022.

Do you see that?

A.   Yes.

Q.   Has Employee 2 worked in the Eastern District of Louisiana from their home since June of 2022?

A.   Yes.

Q.   What business unit is Employee 2 a part of?

A.   Audiobooks.

Q.   Is Employee 2 in good standing with Spotify?

A.   Yes.

Q.   Has Employee 2 always been in good standing with Spotify, that is since they began employment?

A.   Yes.

Q.   Does Spotify require Employee 2 to work in the Eastern District of Louisiana?

A.   No.

Q.   Why is Employee 2 working in the Eastern

Page 92

District of Louisiana?

A.   They chose to work out of the Eastern District of Louisiana.

Q.   Where is Employee 2's team based?

A.   Primarily in Ohio.

Q.   Is there any reason that Employee 2 needs to continue performing their work for Spotify in the Eastern District of Louisiana?

A.   No.

Q.   Does Employee 2 require Spotify's approval to move outside of the Eastern District of Louisiana to somewhere else in the state of Louisiana?

A.   No.

Q.   Has Employee 2 ever been denied a request to relocate?

A.   No.

Q.   Is there any reason that Employee 2 could not relocate to and work from another state?

A.   No.

Q.   Could Employee 2 perform all of their current responsibilities if they were to relocate outside the state of Louisiana?

A.   Yes.

(Exhibit 9 was marked.)

Page 93

BY MR. MOONEY:

Q.   Turn to Exhibit 9, please, which bears production number SPOTIFYUSA_VENUE_27 through 35.

A.   Yes.

Q.   You've got a copy of Exhibit 9?

A.   Yes.

Q.   Do you recognize Exhibit 9?

A.   Yes.

Q.   What is it?

A.   A redacted version of Employee 3's offer letter when they were initially hired into New York City.

Q.   And could you turn to page 0028 of Exhibit 9.  There's a signature that appears on that page.

Do you recognize it?

A.   Yes.

Q.   Whose signature is that?

A.   Katarina Berg's.

Q.   Turn to page 34 of Exhibit 9.  And, again, there's a signature on that page.

Do you recognize it?

A.   Yes.

Q.   Whose signature is it?

A.   Katarina Berg's.



TIJERINO vs SPOTIFY USA, INC.                    Pages 94..97
Lindsey Goring – 30(b)(6), 08/14/2025

Page 94

(Exhibit 10 was marked.)

BY MR. MOONEY:

Q.    Please look at what's been marked as Exhibit 10.  Exhibit 10 bears production numbers SPOTIFYUSA_VENUE_0036 to 43.

Do you have a copy of Exhibit 10 in front of you?

A.    Yes.

Q.    Do you recognize Exhibit 10?

A.    Yes.

Q.    What is it?

A.    It's the employee agreement of Employee Number 3 when they chose to move to the Eastern District Louisiana.

Q.    Would you turn to page 0042 of Exhibit 10.  There's a signature on page 0042.

Do you recognize it?

A.    Yes.

Q.    Whose signature is that?

A.    Katarina Berg.

Q.    Turn back to the first page of Exhibit 10.

A.    Yes.

Q.    Under the Duties and Place of Work heading there is an indicated start date of

Page 95

June 1, 2021.

Do you see that?

A.    Yes.

Q.    Has Employee 3 worked in the Eastern District of Louisiana since June 2 of 2022?

A.    Yes.

Q.    What business unit is Employee 3 part of?

A.    The subscriptions business unit, specifically in customer service.

Q.    Is Employee 3 in good standing with Spotify?

A.    Yes.

Q.    Has Employee 3 always been in good standing with Spotify?

A.    Yes.

Q.    Does Spotify require Employee 3 to work in the Eastern District of Louisiana?

A.    No.

Q.    Has Employee 3 always worked in the Eastern District of Louisiana?

A.    No.  They were initially hired into New York and then chose to move to the Eastern District of Louisiana.

Q.    So why is Employee 3 working in the

Page 96

Eastern District of Louisiana?

A.    They chose to.

Q.    Is there any reason that Employee 3 needs to continue performing their work for Spotify in the Eastern District of Louisiana?

A.    No.  All of their training meetings are virtual.

Q.    Has Employee 3 ever been denied a request to relocate?

A.    No.

Q.    Is there any reason that Employee 3 could not relocate to and work from another state?

A.    No.

Q.    Does Employee 3 require Spotify's approval to move outside of the Eastern District of Louisiana to somewhere else in Louisiana?

A.    No.

Q.    Could Employee 3 perform all of their current responsibilities if they were to relocate outside of the state of Louisiana?

A.    Yes.

(Exhibit 11 was marked.)

BY MR. MOONEY:

Q.    If you look at Exhibit 11, please, Exhibit 11 bears production numbers

Page 97

SPOTIFYUSA_VENUE_0044 through 0050.

Do you have a copy of Exhibit 11, Ms. Goring?

A.    Yes.

Q.    Do you recognize Exhibit 11?

A.    Yes.

Q.    What is it?

A.    It is the redacted version of an employee agreement for Employee Number 4.

Q.    Could you turn to page 0050 of Exhibit 11.  There's a signature on that page.

Do you recognize it?

A.    Yes.

Q.    Whose signature appears on page 0050?

A.    Katarina Berg's.

Q.    Turn back to the first page of Exhibit 11.  Under Duties and Place of Work there is an indicated start date of March 14, 2022.

Do you see that?

A.    Yes.

Q.    Has Employee 4 worked in the Eastern District of Louisiana since March of 2022?

A.    Yes.

Q.    What business unit is Employee 4 a part of?



TIJERINO vs SPOTIFY USA, INC.                                         Pages 98..101
Lindsey Goring - 30(b)(6), 08/14/2025

Page 98

A.   The advertising business unit.

Q.   Is Employee 4 in good standing with Spotify?

A.   Yes.

Q.   Has Employee 4 always been in good standing with Spotify?

A.   Yes.

Q.   Does Spotify require Employee 4 to work in the Eastern District of Louisiana?

A.   No.

Q.   Has Employee 4 always worked in the Eastern District of Louisiana?

A.   No.

Q.   Where did they previously work?

A.   They were previously hired and worked out of New York City and then elected to move to the Eastern District of Louisiana.

Q.   Is there any reason that Employee 4 needs to continue performing their work for Spotify in the Eastern District of Louisiana?

A.   No.

Q.   Does Employee 4 require Spotify's approval to move outside the Eastern District of Louisiana to somewhere else in the state?

A.   No.

Page 99

Q.   Has Employee 4 ever been denied a request to relocate?

A.   No.

Q.   Is there any reason that Employee 4 could not relocate to and work from another state?

A.   No.

Q.   Could Employee 4 perform all of their current responsibilities if they were to relocate outside the state of Louisiana?

A.   Yes.

(Exhibit 14 was marked.)

BY MR. MOONEY:

Q.   Would you look at Exhibit 14, please, which bears production number SPOTIFYUSA_VENUE_0073 through 0076.

A.   You said --

Q.   Exhibit 14.

A.   14.

Q.   Do you recognize Exhibit 14?

A.   Yes.

Q.   What is it?

A.   A redacted version of our Work from Anywhere policy.

Q.   And you were asked earlier today about a 12-month commitment period that's referenced in

Page 100

this Work from Anywhere policy.

Do you recall that?

A.   Yes.

Q.   How, if at all, does the 12-month commitment period impact the ability of the remote Louisiana employees to move location?

A.   All of them have been in the -- in Louisiana for more than 12 months and could put in a request at any time.  For the 12-month commitment, we ask that the location for your country be a 12-month commitment as well as the mix type being home mix.

Q.   Given the start date of the remote employees in Louisiana, does the 12-month commitment period in any way preclude those employees from changing locations?

A.   No.

(Exhibit 15 was marked.)

BY MR. MOONEY:

Q.   Look at Exhibit 15.  The production number here is SPOTIFYUSA_VENUE_0077 to 0083.

A.   Yes.

Q.   Do you recognize Exhibit 15?

A.   Yes.

Q.   What is Exhibit 15?

Page 101

A.   Our Work from Anywhere booklet that we provide to candidates that just accepted their offer with Spotify.

(Exhibit 12 was marked.)

BY MR. MOONEY:

Q.   Turn to Exhibit 12.  The production number on this exhibit is SPOTIFYUSA_VENUE_0051 through 0063.

Do you have a copy of Exhibit 12?

A.   Yes.

Q.   Do you recognize Exhibit 12?

A.   Yes.

Q.   What is Exhibit 12?

A.   It is a redacted version of our BU Guidelines.

Q.   And how, if at all, are these BU Guidelines relevant to where Spotify employees, including the Louisiana employees, work?

A.   It lets employees know what they're eligible for under our Work from Anywhere policy.

Q.   Please turn to page 0055 of Exhibit 12.

A.   Yes.

Q.   What is shown on page 55 of Exhibit 12?

A.   The audiobooks eligibility for Work from Anywhere.



TIJERINO vs SPOTIFY USA, INC.
Lindsey Goring - 30(b)(6), 08/14/2025

Page 102

Q.   And what is shown -- at the bottom there's a note, asterisk, "All employees regardless of location."

Do you see that?

A.   Yes.

Q.   What is shown there?

A.   Saying that all employees, regardless of location, must be able to work specific time zones based on the region they are located, and for the U.S., it is EST.

Q.   Is it correct that business unit guidelines provide that for employees in audiobooks, they're free to live in any state in which Spotify is registered as long as they're able to work EST business hours?

A.   That is correct.

Q.   Does that include Employee Number 2?

A.   Yes.

Q.   Please turn to page 0056 of Exhibit 12, the next page.

A.   Yes.

Q.   Do you have an understanding of what is shown on this page?

A.   It is the eligibility for the subscriptions and markets business unit as well as

Page 103

the advertising business unit.

Q.   And what is reflected in the note at the bottom of this page of Exhibit 12?

A.   An asterisk in italics, "All employees, regardless of location, must be able to work specific time zones based in the region in which they are located."  And for the U.S. it is EST hours.

Q.   Am I correct that business unit guidelines provide that employees in the subscriptions and markets business unit are free to live in any state in which Spotify is registered as long as they're able to work EST business hours?

A.   Yes.

Q.   Does that include Employee 3?

A.   Yes.

Q.   Am I right that business unit guidelines provide that employees in the advertising business unit are free to work at any state in which Spotify is registered as long as they're able to work EST business hours?

A.   Correct.

Q.   Does that include Employee 4?

A.   Yes.

Page 104

Q.   Could you turn to page 0061 of Exhibit 12.

Do you have that in front of you?

A.   Yes.

Q.   What is shown on this page?

A.   The Work from Anywhere eligibility of our global units of accounting and tax.

Q.   And what is reflected in the note at the bottom of page 61 of Exhibit 12?

A.   "All employees, regardless of location, must be able to work specific time zones based on the region where they are located.  For the U.S. it is EST hours."

Q.   So is it correct that business unit guidelines provide that employees in the accounting and tax business unit can work from any state in which Spotify is registered as long as they're able to work Eastern business hours?

A.   Yes.

Q.   Does that include Employee 1?

A.   Yes.

(Exhibit 13 was marked.)

BY MR. MOONEY:

Q.   Would you look at Exhibit 13, which bears production numbers SPOTIFYUSA_VENUE_0064

Page 105

through 0072.

A.   Yes.

Q.   Do you recognize Exhibit 13?

A.   Yes.

Q.   What is Exhibit 13?

A.   It is a redacted version of our Global Work from Anywhere Tax Approval Guidelines.

Q.   And how, if at all, do these guidelines relate to where Spotify employees are permitted to work?

A.   It allows employees to know what legal entities we have registered so that we are able to payroll them and provide benefits.

Q.   How many of -- in how many states is Spotify currently registered?

A.   We're registered in 47 out of the 50 states.

Q.   In which states is Spotify not registered?

A.   Alaska, North Dakota, and Mississippi currently.

Q.   Is it correct that Spotify employees, provided it's consistent with Work from Anywhere policy business unit guidelines, could move to and work from any state other than Alaska,



TIJERINO vs SPOTIFY USA, INC.                                    Pages 106..109
Lindsey Goring - 30(b)(6), 08/14/2025

Page 106

Mississippi, and North Dakota?

A.   Correct.  We would have to register those states in order for them to work out of those states.

Q.   And once Spotify registered in those states, would an employee be able to then work in one of these three states?

A.   Yes.

(Exhibit 18 was marked.)

BY MR. MOONEY:

Q.   Turn to Exhibit 18.  This exhibit is titled "Artist and Label Partnerships Manager GCC."

Do you have a copy of Exhibit 18 in front of you?

A.   Yes.

Q.   Do you recognize it?  And what is it, if you do?

A.   Yes.  It appears to be one of our job postings for an Artist and Label Partnerships Manager, GCC, located in Saudi Arabia.

(Exhibit 20 was marked.)

BY MR. MOONEY:

Q.   Would you turn to Exhibit 20, which is titled "Artist and Label Partnerships Manager,

Page 107

Thailand."

Have you got Exhibit 20?

A.   Yes.

Q.   Do you recognize Exhibit 20?

A.   Yes.

Q.   What is it?

A.   It is one of our job postings for an artist and label partnership manager role located in Thailand.

(Exhibit 22 was marked.)

BY MR. MOONEY:

Q.   Turn to Exhibit 22, which is titled "Artist and Label Partnerships Associate Manager, Philippines."

A.   Yes.

Q.   Do you recognize Exhibit 22?

A.   Yes.

Q.   What is it?

A.   It is a job posting for the artists and label partnership associate manager in the Philippines.

(Exhibit 24 was marked.)

BY MR. MOONEY:

Q.   Turn to Exhibit 24.  Do you recognize Exhibit -- withdrawn.

Page 108

Exhibit 24 is titled "Market Strategy and Operation Analyst, Japan, 8-Month Contract."

Do you recognize Exhibit 24?

A.   Yes.

Q.   What is Exhibit 24?

A.   It is a market strategy and operations analyst job posting of ours for Japan.

(Exhibit 25 was marked.)

BY MR. MOONEY:

Q.   Turn to Exhibit 25.

A.   Yes.

Q.   Exhibit 25 is titled "Lead Workforce Planning Analyst Customer Service," and there's an Attachment A heading that was appended to it before it was filed.

Do you recognize Exhibit 25?

A.   Yes.

Q.   What is Exhibit 25?

A.   It's a job posting of ours for the lead workforce planning analyst for customer service.

Q.   Is there any requirement indicated in Exhibit 25 as to where applicants would have to work or live if they were to land this position with Spotify?

A.   Yes.  On page 4 out of 5 there's a title

Page 109

for Where You'll Be section.  And it says, "We'll offer you the flexibility to work where you work best.  For this role, you can be anywhere in the United States as long as we have a work location.  This team operates within the Eastern Standard timezone for collaboration."

(Exhibit 26 was marked.)

BY MR. MOONEY:

Q.   Turn to Exhibit 26, which is titled Spotify Post Job -- withdrawn.

Exhibit 26 is titled "Lead Workforce Planning Analyst, Customer Service," at the top it looks like "Exhibit C, Spotify post job openings in Louisiana" has been appended to it before it was filed in court in February 11.

Ignoring the header information, do you recognize Exhibit 26?

A.   No.  While there's aspects that appear to say that it is a job posting for Spotify, there are certain aspects that we do not post.

So, for instance, "Spotify Mix, LA" is not something that we would post.  Citing medical paid time off and retirement to "other" is not something that we would post.  And we also do not work with ZipRecruiter to post our job ads.



TIJERINO vs SPOTIFY USA, INC.                           Pages 110..113
Lindsey Goring - 30(b)(6), 08/14/2025

Page 110

Q.   Did Spotify work with ZipRecruiter to create Exhibit 26?

A.   No.

Q.   Did Spotify give ZipRecruiter permission or authorization to create this posting?

A.   No.
     In the five years that I've worked in like vendor management for recruiting, we have not partnered or had any form of paid partnership with ZipRecruiter.

Q.   So over the past five years, has Spotify ever worked with ZipRecruiter to create ads?

A.   No.

Q.   Over the past five years, has Spotify ever given permission to ZipRecruiter or authorization to ZipRecruiter to create any ads?

A.   No.

Q.   Do you know how, then, ZipRecruiter would have posted an ad like that reflected in Exhibit 26?

A.   It's fairly common for job boards like ZipRecruiter or Indeed or Monster to scrape our job postings or public data that includes our job postings and then post them on their website hoping to get more job seekers to go to their

Page 111

website specifically.

Q.   What do you mean by "scrape our job postings"?

A.   Our job postings, you know, we have public data on our website which is like at spotify.com.  And if it's out there, companies could then take essentially part or all of what we've posted and then essentially copy and paste, but it's automated, as their own on their website.

     (Exhibit 3 was marked.)
BY MR. MOONEY:

Q.   Would you look at Exhibit 3, please. Exhibit 3 is titled "Spotify USA, Inc.'s, Responses and Objections to Plaintiffs' Venue-Specific Interrogatories."
     Have you got that exhibit?

A.   Yes.

Q.   Do you recognize this document?

A.   Yes.

Q.   What do you recognize it as being?

A.   The interrogatories that I signed as relates to this case.

Q.   Could you turn to page 21 of Exhibit 3. The page is titled "Verification."  There's a signature on this page 21 of Exhibit 3.

Page 112

     Do you recognize the signature?

A.   Yes.

Q.   Whose signature is that?

A.   My signature.

Q.   Did you sign this verification on July 21, 2025?

A.   Yes.

Q.   At the time that you signed this verification, was it true that factual matters stated within these interrogatory responses were true and correct to the best of your knowledge?

A.   Yes.

Q.   And is it correct that as of today, the factual matters stated within Spotify's interrogatory responses are true and correct to the best of your knowledge?

A.   Yes.

Q.   Could you turn to page 11 of Exhibit 3 in the interrogatory responses -- actually, you might not need those, let me just ask you a few closing questions.
     Does Spotify own, operate, or control any business, office, warehouse, store, or real estate in the Eastern District of Louisiana?

A.   No.

Page 113

Q.   Has Spotify ever owned, operated, or controlled any business office, warehouse, store, or real estate in the Eastern District of Louisiana?

A.   No.

Q.   Does Spotify own, lease, rent, or otherwise exercise any possession or control over any part of the Louisiana remote employees' homes?

A.   No.

Q.   Has Spotify ever owned, leased, rented, or otherwise exercised possession or control of the Louisiana remote employees' homes?

A.   No.

Q.   Did Spotify play a part in selecting any of the Louisiana remote employees' homes in the Eastern District of Louisiana?

A.   No.

Q.   Does Spotify condition the Louisiana remote employees' employment with Spotify on their continued residence in the Eastern District of Louisiana?

A.   No.

Q.   Are the Louisiana remote employees free to live and work wherever they like within the state of Louisiana without needing approval of



TIJERINO vs SPOTIFY USA, INC.                    Pages 114..117
Lindsey Goring - 30(b)(6), 08/14/2025

Page 114

Spotify?

A.   Yes.

Q.   Are the Louisiana remote employees free to live and work wherever they like within the United States consistent with the Work from Anywhere policy?

A.   Yes.

Q.   Does Spotify reimburse any portion of the Louisiana remote employees' housing costs?

A.   No.

Q.   Does Spotify require that the Louisiana remote employees store any inventory, promotional, or marketing materials or any other equipment in their homes?

A.   No.

Q.   Does Spotify require the Louisiana remote employees to distribute any products from their homes to any customers, partners, or third parties in the Eastern District of Louisiana?

A.   No.

Q.   Does Spotify require the Louisiana remote employees to have any interactions with customers, partners, other employees, or third parties at their homes?

A.   No.

Page 115

Q.   Does Spotify require the Louisiana remote employees to have any interactions with customers, partners, other employees, or third parties anywhere in the Eastern District of Louisiana?

A.   No.

Q.   Does Spotify identify the remote employees' homes in the Eastern District of Louisiana as Spotify's place of business?

A.   No.

Q.   Does Spotify list the remote employees' home addresses or personal phone numbers in any public or otherwise external directory?

A.   No.

Q.   Does Spotify condition offers of employment to the Louisiana remote employees on them living in or moving to the Eastern District of Louisiana?

A.   No.

Q.   Does Spotify believe that having the Louisiana remote employees work in the Eastern District of Louisiana is important to Spotify's business?

A.   No.

Q.   Why not?

Page 116

A.   Because these employees can do their roles from anywhere, so long as they're able to work Eastern Standard hours.

Q.   Does Spotify have any intention to hire other employees in or require other employees to move to the Eastern District of Louisiana if any or all of the Louisiana remote employees were to move outside of the district?

A.   No.  All of the employees have either a national or global agreement and do not need to specifically be in the Eastern District of Louisiana.

Q.   Were any of the Louisiana remote employees hired in response to any Spotify job posting soliciting applicants to work in the Eastern District of Louisiana?

A.   No.

Q.   Were any of the Louisiana remote employees hired based on a residence in the Eastern District of Louisiana?

A.   No.

Q.   Is it common for Spotify employees to move from state to state?

A.   Yes.

Q.   Do you know how common that is?

Page 117

A.   Over the last 18 months, we've had nearly 300 employees move from one state to another within the U.S.

MR. MOONEY:

No further questions, pending, of course, any follow-up after Mr. Tijerino asks additional questions, if he has any.

MR. TIJERINO:

Yes, sir, I do have some follow-ups.

First, I would just like to say objection to a lot of your questions, because in oral hearing Judge Lemelle had already solved a lot of those things that you were asking about.

So he basically said that everything was solved except the condition of the employment, but it seems like you asked all the questions all over again.

Now, I didn't go out of the scope of the condition of the employments, you know, to stay very aligned to what he wanted in the order, and -- but, I mean, I do have some questions that I would consider they're within the scope of the



TIJERINO vs SPOTIFY USA, INC.                                    Pages 118..121
Lindsey Goring - 30(b)(6), 08/14/2025

Page 118

condition of the employments for Ms. Goring.

EXAMINATION

BY MR. TIJERINO:

Q.   So, Ms. Lindsey, you said that all the employees work underneath a business unit, correct, in the Eastern District?

A.   Yes.  We have what's called business units or global units.

Q.   Right.

So they're called HR business partnerships?

A.   Yes.  So our human resources representatives have business partners, so an HRBP, or a human resources business partner, with the different business units within Spotify.

Q.   So are they located in the Eastern District as well, or they're located in different places?

A.   No.  Two of them are located in New York City, one in Chicago, and one in London.

Q.   Okay.  And you said that you don't advertise the roles in Louisiana, correct?

A.   Correct.

Q.   But did you -- you said you mentioned

Page 119

that you signed the interrogatories.

Did you also -- was that also you that answered the request for admissions?

A.   I'm not sure.

Q.   Okay.  Because I was just asking because someone from Spotify said that y'all have external hiring systems and internal hiring systems.  So on the internal hiring system, that's where you list the jobs and the business units list the jobs according to their business needs and then the employees are able to choose from those jobs.

So I'm wondering -- so the business units, based on business units, had to list the jobs in the Eastern District, and then people are able to select from it, right?  Like they're able to select from what was available, correct?

A.   No.  These employees had their jobs, and three out of four employees were hired into New York City, and then they requested to move to the Eastern District of Louisiana maintaining their same job.

Q.   That sounds confusing.

A.   So, for instance, Employee Number 1, who is in accounting, kept their same role in accounting and simply requested to move to the

Page 120

Eastern District of Louisiana with their same role.

Q.   Right.  But they had to elect it, right, from a system?

A.   They had to put in the request for themselves to move to the Eastern District of Louisiana.  Their role is not tied to the Eastern District of Louisiana.

Q.   So you're stating that the business units, they don't create roles based on needs, where they need the people?

A.   They do, but we do not have specific needs to the Eastern District of Louisiana.  Most of our needs are tied to our New York City hub or headquarters, U.S. headquarters.

MR. TIJERINO:

Okay.  Well, thank you for answering those questions.

MR. MOONEY:

Just two last questions.

EXAMINATION

BY MR. MOONEY:

Q.   Ms. Goring, do any of the Louisiana remote employees have any responsibilities at all relating specifically to the Eastern District of

Page 121

Louisiana?

A.   No.

Q.   Have any of the Louisiana remote employees ever had any responsibilities relating specifically to the Eastern District of Louisiana?

A.   No.

MR. MOONEY:

Nothing further.

Did you have anything further, Mr. Tijerino?

EXAMINATION

BY MR. TIJERINO:

Q.   Well, I don't want to name any names, but Employee Number 2, was that the one that did the audiobooks?

A.   Yes.

Q.   And her profile somewhere, you know, on a website somewhere, it was in an exhibit, earlier exhibit, but basically she increases brand awareness and engages, you know, with the community and does deal-making and all that stuff.

Is that something that's not done here in the Eastern District?

A.   Employee Number 2's responsibilities are national and, at times, international.  She



TIJERINO vs SPOTIFY USA, INC.                         Pages 122..125
Lindsey Goring - 30(b)(6), 08/14/2025

Page 122

specifically works with audiobooks licensing.  So it's not tied specifically to the Eastern District of Louisiana but, instead, to audiobooks in an either national or sometimes global capacity.

Q.   Okay.  But she's never sourced any audiobooks from the Eastern District; is that correct?

A.   Not to my knowledge.

Q.   Okay.  And the roles that were, you know, at different places -- you know, like the roles to -- you know, like to talk to the studios and promote all that stuff, y'all don't do anything like that in the Eastern District?

A.   I'm not familiar --

Q.   With the employee --

A.   -- with work within the studios specifically.

MR. TIJERINO:

Okay.  I think that's all the questions I have.

MR. MOONEY:

Nothing further here.  We can go off the record as soon as you say so.

MR. TIJERINO:

I think we're good to go.

Page 123

(END OF TESTIMONY AT 12:41 P.M.)

Page 124

REPORTER'S PAGE

I, RITA A. DEROUEN, Registered Professional Reporter (RPR #6908) and Certified Court Reporter in and for the State of Louisiana, (CCR #2014018), as defined in Rule 28 of the Federal Rules of Civil Procedure and/or Article 1434(B) of the Louisiana Code of Civil Procedure, do hereby state on the Record:

That due to the interaction in the spontaneous discourse of this proceeding, dashes (--) have been used to indicate pauses, changes in thought, and/or talkovers; that same is the proper method for a Court Reporter's transcription of proceeding, and that the dashes (--) do not indicate that words or phrases have been left out of this transcript;

That any spelling of words and/or names which could not be verified through reference material have been denoted with the phrase "(phonetic)";

That (sic) denotes when a witness stated word(s) that appears odd or erroneous to show that the word is quoted exactly as it stands.

RITA A. DEROUEN, RPR, CCR

Page 125

REPORTER'S CERTIFICATE

I, Rita A. DeRouen, Registered Professional Reporter (RPR #6908) and Certified Court Reporter (Certificate #2014018) in and for the State of Louisiana, as the officer before whom this testimony was taken, do hereby certify that on August 14, 2025, in the above-entitled and numbered cause, the 30(B)(6) deposition of SPOTIFY USA, INC., THROUGH LINDSEY GORING, after having been duly sworn by me upon authority of R.S. 37:2554, did testify as hereinbefore set forth in the foregoing 124 pages;

That this testimony was reported by me in stenographic shorthand, was prepared and transcribed by me or under my personal direction and supervision, and is a true and correct transcript to the best of my ability and understanding;

That the transcript has been prepared in compliance with transcript format guidelines required by statute or by rules of the board;

That I have acted in compliance with the



Page 126

prohibition on contractual relationships, as defined by Louisiana Code of Civil Procedure Article 1434 and in rules and advisory opinions of the board;

That I am not of Counsel, nor related to any person participating in this cause, and am in no way interested in the outcome of this event.

Signed this 18th day of August, 2025.

RITA A. DEROUEN
Registered Professional Reporter
Certified Court Reporter

Page 127

WITNESS CERTIFICATION

I, LINDSEY GORING, the undersigned, do hereby certify that I have read the foregoing deposition taken on August 14, 2025, and it contains a true and accurate transcript of the testimony given by me:

(  )  No corrections.
(  )  With corrections as reflected on the Errata Sheet(s) prepared by me and attached hereto consisting of _____ pages.

_____
LINDSEY GORING
_____
Date

Page 128

AMENDMENT(S) PAGE

I, LINDSEY GORING, have read or have had the foregoing testimony read to me and hereby certify that it is a true and correct transcription of my testimony with the exception of the following corrections or changes, if any:

Page    Line                Correction
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____

_____
LINDSEY GORING

Page 129

AMENDMENT(S) PAGE

I, LINDSEY GORING, have read or have had the foregoing testimony read to me and hereby certify that it is a true and correct transcription of my testimony with the exception of the following corrections or changes, if any:

Page    Line                Correction
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____

_____
LINDSEY GORING



TIJERINO vs SPOTIFY USA, INC.
Lindsey Goring - 30(b)(6), 08/14/2025    Index: ..984357-001_Goring -

---

### Exhibits

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh 3
 4:8 76:6
 111:10,
 12,13,23,
 25 112:18

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh 6
 4:11 76:6
 85:11,13,
 15,17,21,
 25 86:6,
 11,19
 87:1

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh 7
 4:14
 87:5,7,9,
 11,16,19,
 24

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh 8
 4:17
 90:7,9,
 13,15,19,
 23 91:3

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh 9
 4:20
 92:25
 93:2,5,7,
 14,20

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh 10
 4:23
 94:1,4,6,
 9,16,22

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh 11
 5:3

96:22,24,
 25 97:2,
 5,10,11,
 16,17

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh 12
 5:6
 101:4,6,
 9,11,13,
 21,23
 102:19
 103:3
 104:2,9

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh 13
 5:9
 104:22,24
 105:3,5

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh 14
 5:12
 99:11,13,
 17,19

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh 15
 5:15
 100:18,
 20,23,25

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh 18
 5:18
 106:9,11,
 14

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh 20
 5:21
 106:22,24
 107:2,4

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh 22
 6:2
 107:10,
 12,16

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh 24
 6:5
 107:22,24
 108:1,3,5

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh A
 3:13
 26:8,11,
 13,18

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh B
 3:16
 48:8,9,12

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh C
 3:19 6:12
 50:16,17
 51:8 72:6
 109:13



984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh D
 20:22

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh E
 3:22
 37:4,5,6,
 7 44:9,14
 46:3

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh F
 4:2
 17:17,21
 18:6
 19:11

984357-
001_
Goring -
 30(b)(6)_
Lindsey_
081425_
Exh G
 4:4 14:3,
 7,11
 17:18,22

——————————
      0
——————————

000011
 86:8
0018
 87:15,19
002
 86:19
0026
 90:11,18,
 22
0028
 93:13
0042
 94:15,16
0050
 97:1,10,
 14
0055
 101:21
0056
 102:19
0061
 104:1
0063
 101:8
0072
 105:1
0076
 99:15
008
 86:21,23
 87:1
0083
 100:21

——————————
      1
——————————

1
 10:22
 14:14,17,
 21 18:17,
 18,19
 74:10
 80:1,16
 81:17
 87:13
 88:4,7,
 11,14,17,
 20 89:1,
 6,13,17,
 22,25
 90:3 91:4
 95:1
 104:20
 119:23
1's
 81:21
 85:18
 89:10
1,500
 78:9
10
 22:7
 94:1,4,6,
 9,16,22
10:12
 8:1,9
11
 22:9
 96:22,24,
 25 97:2,
 5,11,17
 109:15
 112:18

12
 22:11
 33:6
 34:22
 35:6,13
 40:24
 41:13
 52:20
 53:5 57:1
 100:8
 101:4,6,
 9,11,13,
 21,23
 102:19
 103:3
 104:2,9
12-month
 33:1,15
 34:4,13,
 18 47:25
 53:16
 99:25
 100:4,9,
 11,14
12:41
 123:1
13
 20:21
 22:13
 104:22,24
 105:3,5
14
 8:8 97:18
 99:11,13,
 17,18,19
15
 100:18,
 20,23,25
18

 76:3
 106:9,11,
 14 117:1

——————————
      2
——————————

2
 10:22
 14:17,23
 18:18
 21:16
 80:1,16
 82:19,23
 86:10
 90:17
 91:8,12,
 15,18,22,
 25 92:6,
 10,15,18,
 21 95:5
 102:17
 121:14
2's
 92:4
 121:24
20
 106:22,24
 107:2,4
2015
 77:22
2021
 95:1
2022
 88:4,9
 91:5,10
 95:5
 97:18,22
2025
 8:8,16



16:13,15
17:11
26:7
112:6

**21**
111:23,25
112:6

**22**
91:5
107:10,
12,16

**24**
13:2
16:13
18:18,20
107:22,24
108:1,3,5

**25**
108:8,10,
12,16,18,
22

**26**
8:16
16:15
18:17
109:7,9,
11,17
110:2,20

**27**
78:11,16,
18,23
79:4

**2:24-cv-
02290-
ilrl-dpc**
8:7

---
**3**
---

**3**
10:22
21:18
76:5,6
80:1,16
83:23
84:8
94:13
95:4,7,
11,14,17,
20,25
96:3,8,
11,14,18
103:16
111:10,
12,13,23,
25 112:18

**3's**
84:2
93:10

**3,500**
78:3

**30**
18:19

**30(b)(6)**
8:12,14

**300**
117:2

**34**
93:20

**35**
93:3

---
**4**
---

**4**
10:22
13:20
21:20
78:5
80:1,16
84:25
85:4
97:9,21,
24 98:2,
5,8,11,
18,22
99:1,4,7
103:24
108:25

**43**
94:5

**47**
27:15
40:9
105:16

---
**5**
---

**5**
21:22
53:25
108:25

**50**
27:15
40:10
105:16

**53**
18:20

**55**
101:23

**59**
18:20

---
**6**
---

**6**
21:24
76:6
85:11,13,
15,17,21,
25 86:6,
11,19
87:1

**61**
104:9

**62**
13:21

---
**7**
---

**7**
22:1
87:5,7,9,
11,16,19,
24

**7,400**
77:25

**70**
27:14

**73**
26:7

**76**
8:17
16:15
17:15,18
19:7
20:10,15
50:24

**59:14**
68:19

**79**
17:11

**79-1**
26:6

---
**8**
---

**8**
22:3 26:7
90:7,9,
13,15,19,
23 91:3

**8-month**
108:2

**83**
20:16

**84**
26:7

---
**9**
---

**9**
17:11
18:24
22:5
92:25
93:2,5,7,
14,20

---
**A**
---

**a.m.**
8:1,9

**abide**
24:15,25
25:25



29:10
30:19
50:9

**ability**
13:2,7
15:18
28:25
100:5

**Absolutely**
75:11

**acceptable**
79:19

**accepted**
101:2

**access**
63:3,13,
19,23

**accommodate**
33:25
34:10
60:13

**accommodations**
55:4

**account**
61:11

**accounting**
81:3,8,15
88:13
104:7,16
119:24,25

**accurately**
13:3,16
18:2

**acknowledge**

62:15

**acknowledging**
62:3,10

**acquired**
23:14

**acquisition**
82:24

**actions**
66:5

**actual**
23:22

**ad**
110:19

**addition**
30:14

**additional**
30:4
54:18
63:25
85:23
117:7

**address**
13:19,20
38:9
46:21
60:25
61:3,5,
11,14
62:4,11

**addresses**
115:12

**admin**
40:12
60:14

**administration**
35:25

**administrative**
40:7
60:12

**admissions**
119:3

**ads**
84:20
109:25
110:12,16

**advance**
33:3,22
35:22

**advanced**
65:5

**advertise**
118:23

**advertising**
84:10,23
98:1
103:1,19

**affect**
13:2

**affected**
65:18

**aforementioned**
16:22

**agree**
19:17

**agreed**
17:9

**agreement**
62:21
87:12
90:17
94:12
97:9
116:10

**agreements**
43:1

**ahead**
9:20 12:4

**AI**
11:24

**aimed**
68:10

**Alaska**
105:20,25

**alcohol**
12:25
13:6

**aligned**
117:22

**allowed**
67:17
73:24

**Americas**
58:22
59:2,4

**amount**
35:2

**analyst**
108:2,7,
13,20
109:12

**and/or**
62:4,11

**agreement**
83:13

**Andrew**
83:13

**anonymized**
10:21

**answering**
21:11
120:17

**answers**
13:16

**anti-corruption**
25:12

**anti-discrimination**
25:14

**apologize**
58:14
68:7

**appearances**
8:21

**appearing**
12:8

**appears**
90:22
93:14
97:14
106:19

**appended**
108:14
109:14

**Appendix**
85:23
86:2

**applicable**
25:23



**applicants**
  108:22
  116:15

**application**
  24:7 30:9
  54:20
  55:8

**applications**
  53:15

**applies**
  25:10
  26:5
  33:1,16
  36:25
  42:4
  44:10

**apply**
  33:2,21
  34:22
  35:7 36:3
  45:2
  49:17,20
  54:21
  55:3,9,16
  57:2
  59:1,2
  63:11

**applying**
  52:20
  57:21
  58:18

**approval**
  32:10
  34:18
  39:12
  40:18,19
  44:1

45:25
47:4
48:19
49:25
50:9
54:3,13
56:15,23
57:7
59:15,19
65:5,17,
22,23
66:3,18
71:8,13
89:18
92:11
96:15
98:23
105:7
113:25

**approvals**
  54:18

**approve**
  30:20
  53:17
  67:6,9

**approved**
  34:4 50:2
  60:19,24
  64:4,12,
  21,24
  65:12
  66:14

**approves**
  65:1 66:9
  67:13

**approving**
  65:3
  73:16

**Arabia**

106:21

**area**
  22:25

**artist**
  106:12,
  20,25
  107:8,13

**artists**
  107:19

**asks**
  117:7

**aspects**
  109:18,20

**assets**
  49:8

**assigned**
  69:1

**assignment**
  69:24
  70:6,17

**assisting**
  69:16

**associate**
  107:13,20

**Assumption**
  20:23
  21:13

**asterisk**
  102:2
  103:4

**Attachment**
  108:14

**attending**
  70:7

**attorney**

15:25
76:22

**attorneys**
  80:10

**audiobooks**
  82:5,17
  91:14
  101:24
  102:13
  121:15
  122:1,3,6

**August**
  8:8

**authorities**
  20:15

**authorization**
  110:5,16

**automated**
  111:9

**automatically**
  61:6,14

**availability**
  32:14

**avoid**
  50:1

**aware**
  16:11
  19:1

**awareness**
  121:20

———————
**B**

**back**
  34:8
  87:23
  91:2
  94:21
  97:16

**Baptist**
  21:2 22:5

**based**
  21:9
  22:19
  23:11
  28:22
  30:22
  32:1 41:8
  52:13,14
  88:23
  89:10,11
  92:4
  102:9
  103:6
  104:11
  116:19
  119:13
  120:10

**basically**
  71:22
  72:14
  75:22
  117:16
  121:19

**bears**
  90:10
  93:2 94:4
  96:25
  99:14
  104:25



TIJERINO vs SPOTIFY USA, INC.
Lindsey Goring - 30(b)(6), 08/14/2025                    Index: began..choose

**began**
  88:18
  91:19

**begin**
  11:14
  75:14
  77:21

**behalf**
  9:7 15:7,
  10 19:23
  20:3 70:9

**benefits**
  29:1
  58:5,8,12
  105:13

**Berg**
  86:13,15
  94:20

**Berg's**
  86:18
  87:4,22
  91:1
  93:19,25
  97:15

**Bernard**
  21:1,24

**bit**
  74:9

**boards**
  110:21

**booklet**
  101:1

**bottom**
  36:12
  55:7 59:8
  63:16
  86:22

  90:22
  102:1
  103:3
  104:9

**bound**
  25:19
  34:25
  42:18

**brand**
  121:19

**breach**
  43:18
  46:5,15

**break**
  15:20
  75:7,8,12

**briefly**
  9:25 18:1

**BU**
  29:12,21
  64:18
  101:14,16

**BU-SPECIFIC**
  30:8,22
  56:3

**BUS**
  29:14,24

**business**
  13:18,20
  25:13
  30:3,14,
  20 34:5
  44:2
  48:20
  49:5
  50:6,8
  54:13

  55:18,23
  59:20
  60:20
  68:17,21
  72:20
  80:15
  81:4,7,15
  82:5,9,17
  83:10,13,
  21 84:10,
  20,23
  88:11,13
  91:12
  95:7,9
  97:24
  98:1
  102:11,
  15,25
  103:1,9,
  11,14,18,
  19,22
  104:14,
  16,18
  105:24
  112:23
  113:2
  115:9,23
  118:6,8,
  11,14,15,
  16 119:9,
  10,12,13
  120:9

―――――――――
        **C**
―――――――――

**called**
  76:13
  118:8,11

**Canada**
  38:5
  56:17

  58:9,13

**candidates**
  101:2

**capacity**
  122:4

**Carr**
  82:9,15,
  22

**Carr's**
  82:11

**case**
  8:6 10:7
  11:4
  16:12
  41:5
  79:24
  111:22

**cases**
  66:5

**Center**
  13:21

**Central**
  8:9

**certificate**
  14:19

**cetera**
  72:25

**chance**
  17:24

**change**
  30:22
  32:8
  33:9,20
  35:21
  37:1,23
  45:17

  51:3,4,
  16,17
  52:21
  53:15
  54:3,14,
  20,25
  62:3,10
  65:11
  73:6,20,
  22

**changing**
  65:5
  67:15
  73:2,11
  100:16

**Charles**
  9:6 21:1
  22:1

**Chat**
  11:24

**check**
  18:9
  43:24
  75:5,19

**Chen**
  9:3

**Chicago**
  118:21

**chief**
  86:16,17

**China**
  50:12

**choice**
  30:5 89:8

**choose**
  62:14
  119:11



TIJERINO vs SPOTIFY USA, INC.
Lindsey Goring - 30(b)(6), 08/14/2025          Index: chose..confusing

| | | | | |
|---|---|---|---|---|
| **chose** | 44:15 | 45:5 64:8 | **companies** | **computer** |
| 22:24 | **Citing** | 71:16,21 | 111:6 | 76:8 |
| 41:22 | 109:22 | **clauses** | **company** | **concern** |
| 42:8 52:7 | **city** | 86:3 | 15:11 | 19:14 |
| 87:13 | 20:25 | **clear** | 23:14,23 | **concerns** |
| 92:2 | 23:11,12 | 29:2 56:4 | 25:5,21 | 50:13 |
| 94:13 | 24:3,5 | 74:24 | 32:10 | **condition** |
| 95:23 | 36:15 | **client** | 38:3 | 16:21 |
| 96:2 | 38:2,14 | 69:7 | 39:23 | 17:6 |
| **chosen** | 39:1,5 | **closing** | 42:2,14 | 20:13 |
| 21:10 | 41:7,18 | 112:21 | 43:7,13 | 25:20 |
| 23:15 | 44:24 | **code** | 54:17 | 66:19 |
| 31:23 | 45:17 | 24:22,25 | 64:4,13, | 67:7 |
| 32:1 | 46:2,3 | 25:13 | 21,25 | 68:15 |
| 34:14 | 47:5 | **collaborat** | 66:8,15 | 113:18 |
| **Christians** | 52:12 | **ion** | 67:11 | 115:15 |
| **en** | 63:10,14 | 72:19 | 71:7,12 | 117:17,21 |
| 81:7,13, | 74:5,7 | 109:6 | 88:18 | 118:1 |
| 20 | 78:5,8 | **color** | **company's** | **conditions** |
| **Cini** | 81:24 | 79:4 | 49:3,13 | 8:18 |
| 83:13,19 | 84:4 | **commit** | 66:18 | 10:17 |
| 84:1 | 85:5,20 | 52:18,25 | **compensati** | 18:12 |
| **Cini's** | 88:23 | **commitment** | **on** | 31:21 |
| 83:15 | 89:3,11 | 32:21 | 10:10 | 86:3 |
| **circumstan** | 93:12 | 33:1,12, | **completely** | **conduct** |
| **ce** | 98:16 | 15 34:4, | 16:5 | 24:22,25 |
| 34:11 | 118:21 | 13,18 | **compliance** | 25:14 |
| **circumstan** | 119:19 | 35:24 | 43:7,13 | **conference** |
| **ces** | 120:14 | 99:25 | 49:3 50:1 | **s** |
| 33:9 | **Civil** | 100:5,10, | **compliant** | 70:8 |
| **cite** | 8:15 17:4 | 11,15 | 48:24 | **confidenti** |
| 38:2 | **clarificat** | **common** | **comply** | **al** |
| **Cited** | **ion** | 110:21 | 24:12,21 | 10:12 |
| 20:15 | 56:5,7 | 116:22,25 | 25:20 | **conflict** |
| **cities** | **clarified** | **community** | 29:4 | 25:13 |
| 40:18 | 20:16 | 69:20,25 | 30:13 | **confusing** |
| 42:5 | **clarify** | 121:21 | 34:17 | 119:22 |
| 43:25 | 22:16 | | 50:23 | |
| | 28:20 | | 59:14 | |



TIJERINO vs SPOTIFY USA, INC.
Lindsey Goring - 30(b)(6), 08/14/2025          Index: connection..create

| | | | | |
|---|---|---|---|---|
| **connection** 77:18 | 19:19 89:14 92:7 96:4 98:19 | 93:5 94:6 97:2 101:9 106:14 111:8 | 24 45:10 47:14 48:13,19, 25 49:4, 9,10,15, 19 50:3 | 64:17 |
| **connects** 68:17 | **continued** 16:17 | **corporate** 8:12 15:3 | 57:15 59:21 | **country** 27:18 28:16 33:19 34:8,9 35:6,9 41:2,4 53:1 57:2,25 58:1,3,4 62:20 65:10,20 100:11 |
| **consequenc es** 47:13 | 65:17 113:20 | 19:24 25:4 | 64:5,13, 22 65:1, 3,6,18 | |
| **considerat ions** 74:12 | **contract** 23:23 42:19,24 43:6,12, 19 46:6, 16 108:2 | **correct** 19:2 22:20 26:23 27:7,13, 20 28:18, 19,23 29:6 30:1,2,5, 6,10,11, 15,23,24 31:13,21, 22,25 32:6,7, 10,11,18, 19 33:13, 17,22 34:6,19 35:13,17, 22 36:5, 11,16 37:2,3, 12,25 39:1,23 40:15,19, 25 41:19 42:2,6, 14,15,19, 25 43:3, 4,8,14, 15,19 44:12,18, | 66:10,16, 21 67:9, 16 77:13, 16 78:21 79:23 102:11,16 103:9,23 104:14 105:22 106:2 112:11, 13,15 118:7,23, 24 119:16 122:7 | |
| **considered** 32:17 | | | | **county** 20:19 |
| **consistent** 19:15 105:23 114:5 | **contractor** 77:12 | | | **couple** 68:22 72:15 |
| **consists** 20:20 | **contracts** 42:21 | | | **court** 8:2,5,16 9:12,19 12:23 13:15 16:14,20 18:3,9, 17,18,19 19:25 20:1 28:7,8 79:2 109:15 |
| **constraint s** 51:5,18, 25 | **contractua lly** 25:19 42:18 | | **correctly** 27:2 58:20 | |
| **consumed** 12:25 | **control** 19:2 112:22 113:7,11 | | **cost** 50:8 | |
| **content** 69:3,11, 14,16 70:19 71:2 | **controlled** 113:2 | | **costs** 114:9 | **court's** 17:18 20:22 |
| **contents** 88:3 | **controls** 47:11 | | **counsel** 8:20 9:3 17:9 | |
| **context** 29:14,24 | **conversely** 27:16 28:14 | | | **create** 82:12 84:18 110:2,5, |
| **contingent** 77:10 | **copy** 11:8 17:17,19 78:18 | | **countries** 35:18 38:4 50:12 | |
| **continue** | | | | |



TIJERINO vs SPOTIFY USA, INC.
Lindsey Goring – 30(b)(6), 08/14/2025          Index: creative..district

12,16
120:10

**creative**
69:4 70:2

**creators**
69:3,11,
14,16
70:19
71:2

**current**
12:13,15,
16 13:18,
20 23:8
53:10
58:3 60:7
77:1,3
90:4
92:22
96:19
99:8

**customer**
95:10
108:13,20
109:12

**customers**
114:18,23
115:3

**Cxo**
54:13

**cybersecurity**
49:11
50:13

——————————
**D**
——————————

**Dakota**
105:20

106:1

**data**
110:23
111:5

**date**
8:8 22:20
39:21
45:22
88:4 91:4
94:25
97:18
100:13

**deal-making**
121:21

**deals**
80:20

**December**
88:4,8

**decision**
72:24

**Defendant**
16:11

**Defendants'**
17:1

**define**
30:4

**denial**
71:8,14
73:11

**denied**
54:20
55:8
89:22
92:15
96:8 99:1

**deny**
30:21
53:9,23
54:9,23
55:15
73:21
82:1
83:3,5,7
84:7 85:9

**denying**
73:16

**deposition**
8:11
10:20
12:18
13:24
14:12
16:10
17:3,5,
12,19
18:11
19:15
20:9
80:10

**descriptions**
81:11
82:13
83:17
84:18

**designate**
32:4

**designated**
19:24
21:11
25:4

**desired**
54:22
55:10

57:22
58:19

**desk**
32:15

**detail**
24:10

**details**
21:7
23:5,20
24:19
25:4,18

**determine**
81:11
82:13
83:17
84:19

**determines**
31:24

**difficult**
59:5 74:9

**direct**
54:15

**directed**
17:8

**directly**
68:18

**director**
54:12

**director-plus**
54:16

**directory**
115:13

**disciplinary**
66:5

**discipline**
48:4

**disclose**
10:19
80:5

**discovery**
16:18
17:1
20:11

**discuss**
26:4
36:16,20
37:24
38:15,25
39:6
44:23
45:18
51:4,17,
20,22
56:8 66:4

**discussed**
10:24
84:6

**discussion**
50:24
76:18
80:23
81:20
82:22
84:1 85:3

**dismiss**
16:12,16

**distribute**
114:17

**district**
8:5,6
10:16
15:8,16



16:24
18:16
20:4,12,
20 21:8
22:18,24
23:3,8,
13,15
24:8,11,
20 25:7,
19 26:5
27:11,18,
25 28:3,
15 29:3,9
30:12,18
32:3,17
34:16,21,
25 36:4,
22 38:24
39:3
41:5,11,
13,16,19,
23 42:17
43:16
44:11,15
45:11
46:2,10
47:4,10,
19,22,23,
24 49:18,
22,24
50:23
51:2,15,
24 52:3,
7,8,17,20
53:3,4,
11,20,24
54:2,24
55:13,22
56:11,25
57:5
59:13,17
60:6,17

62:1,8,25
63:8 64:2
66:13,25
68:12,25
69:6,8,23
70:4,10,
13,21,24,
25 71:5
73:18
74:8
79:1,6,
11,15
80:25
81:25
83:1 84:5
85:6
87:14
88:8,21,
25 89:2,
7,15,18
91:9,23
92:1,3,8,
11 94:14
95:5,18,
21,24
96:1,5,15
97:22
98:9,12,
17,20,23
112:24
113:3,16,
20 114:19
115:4,8,
17,22
116:6,8,
11,16,20
118:7,18
119:14,20
120:1,6,
8,13,25
121:5,23
122:2,6,

13

**District's**
30:21

**docket**
8:17
16:15
17:15,18
19:7
20:15,16
50:24
59:14
68:19

**document**
17:11
26:6,14
37:18,19
44:19
62:3,10,
16 78:12
111:18

**documents**
10:7,23
11:11
17:10,14
18:23
75:23
79:24

**double-
check**
26:9

**drug**
13:6

**due**
40:6 50:7
60:11

**duly**
9:17

**duration**
48:23

**duties**
49:8 63:1
69:10,16
88:1 91:3
94:24
97:17

———————

**E**

———————

**earlier**
38:11
41:15
42:16
99:24
121:18

**Eastern**
8:6 10:16
15:8,16
18:15
20:4,12,
20 21:8
22:18,23
23:3,8,
13,15
24:8,11,
20 25:6,
19 26:5
27:11,17,
25 28:3,
15 29:2,9
30:12,18,
21 32:3,
17 34:16,
21,24
36:4,18,
22,24
38:24
39:3

41:5,11,
12,16,18,
19,23
42:17
43:16
44:11,15
45:11
46:2,9
47:4,10,
19,21,23,
24 49:18,
21,24
50:23
51:2,15,
24 52:8,
10,17
53:3,4,
11,20,24
54:2,24
55:13,22
56:11,25
57:5
59:4,13,
17 60:6,
17 62:1,
8,25 63:7
64:2
66:13,25
68:12,25
69:6,8,23
70:4,10,
13,21,24
71:5
73:18
74:7
79:1,6,
11,15
80:25
81:25
83:1 84:5
85:6
87:13



88:8,21,
25 89:2,
7,15,18
91:8,23,
25 92:2,
8,11
94:13
95:4,18,
21,23
96:1,5,15
97:21
98:9,12,
17,20,23
104:18
109:5
112:24
113:3,16,
20 114:19
115:4,8,
17,21
116:3,6,
11,16,20
118:7,17
119:14,20
120:1,6,
7,13,25
121:5,23
122:2,6,
13

**effect**
12:23

**effective**
39:21

**effectively**
58:2

**effort**
57:11

**efforts**
77:19

**elect**
41:17
47:10,20
53:7
64:3,12,
15,16
67:12,17
74:6
120:3

**elected**
23:12
35:3,5,12
40:24
41:1,2,6,
12,16,18,
20 47:22
52:19
53:3 65:6
66:12
81:24
82:25
84:4 85:6
89:4
98:16

**electing**
74:13

**election**
33:5 66:9
67:13

**elections**
32:25

**elects**
66:7

**eligibility**
55:24
81:12,22
82:14
83:18

84:20
101:24
102:24
104:6

**eligible**
101:20

**emailed**
75:21

**emails**
14:19

**Emma**
9:10

**employ**
66:24

**employed**
58:6,12
81:23
88:3

**employee**
10:22
11:1
21:6,10
23:14,19
24:9,18,
22 25:3,
17 27:12
28:15
31:19,24
33:7,20
35:3,16,
21 36:15
37:20
38:13,23
39:19
40:22
41:25
42:12,24
43:1,17
44:23

46:2
48:16
49:24
50:7
61:11
62:21
64:3
65:16
66:7,10
74:10
77:9
81:17,21
82:19,23
83:23
84:2,8,25
85:4,18
87:12
88:3,7,
11,14,17,
20 89:1,
6,10,13,
17,22,25
90:3,16,
17 91:8,
12,15,18,
22,25
92:4,6,
10,15,18,
21 93:10
94:12
95:4,7,
11,14,17,
20,25
96:3,8,
11,14,18
97:9,21,
24 98:2,
5,8,11,
18,22
99:1,4,7
102:17
103:16,24

104:20
106:6
119:23
121:14,24
122:15

**employee's**
23:23
30:5,21
33:16
34:5 37:2
60:19
64:25
66:16

**employees**
8:19
10:11,14
15:8,16
16:19,22
17:8
18:13
20:4,11,
14 21:8
22:18,23
23:3,4,8,
10 24:2,
7,11,14,
20,24
25:6,11,
18,24
26:6
27:5,24
28:2,22,
25 29:3,
6,7,8
30:7,13
32:4,6,16
34:17,20,
24 35:12
36:4,22,
23 39:2,
4,22



TIJERINO vs SPOTIFY USA, INC.
Lindsey Goring - 30(b)(6), 08/14/2025       Index: employees'..exercised

41:6,10, 15 42:16 44:11,13 45:10 46:9 47:4,9, 17,18,21 48:4 49:12,18, 20,21 50:22 51:1,14, 25 52:6, 10,11,16, 25 53:2, 10,15,24 54:1,12, 19 55:13, 21 56:2, 10,24 57:5,19, 20 59:12, 16,24 60:7,16, 23 61:4, 25 62:7, 24 64:1, 10,15 65:4,9 66:11 67:1,12 68:11,16, 24 69:5, 9,15,22 70:5,16, 23 71:7, 12 73:18 74:6,13 75:2 77:23 78:1,7 79:12,14,

16,20,21, 25 80:1, 7,16 81:15 82:16 83:20 84:22 100:6,14, 16 101:17, 18,19 102:2,7, 12 103:4, 10,19 104:10,15 105:9,11, 22 113:23 114:3,12, 17,22,23 115:2,3, 16,21 116:1,5, 7,9,14, 19,22 117:2 118:6 119:11, 17,18 120:24 121:4

**employees'**
113:8,12, 15,19 114:9 115:8,11

**employer**
12:14,15 27:6,11, 17,19 28:5,10, 17,23

**employment**
8:18 10:17 16:21,23 17:7 18:12,14 20:13 25:20 31:21 42:19,21 43:6,12, 18 46:6, 16,17 58:3,11 65:17 66:20 68:15 86:4 91:20 113:19 115:16 117:18

**employments**
117:21 118:1

**END**
123:1

**ending**
58:2,10

**enforces**
67:14

**engage**
69:7

**engagement**
69:25 71:8,13, 18,19 73:10

**engages**
121:20

**engaging**
69:2 71:2

**entered**
11:4

**enterprise**
49:8

**entirety**
24:23 85:25

**entities**
35:19 57:2 105:12

**entity**
56:13,22 64:20 65:20

**equally**
36:3 49:17

**equipment**
114:13

**equivalent**
20:18

**essentially**
88:24 111:7,8

**EST**
102:10,15 103:7,13, 22 104:13

**establish**
68:19

**estate**
80:14,18 112:24 113:3

**ethics**
24:22 25:22 26:1

**Europe**
58:21 59:3,6

**events**
70:8

**exact**
33:11

**EXAMINATION**
12:5 76:19 118:3 120:21 121:11

**examined**
9:17

**exception**
53:18 88:23

**exceptions**
33:8 34:3

**excerpts**
75:25

**excluding**
79:11

**exercise**
113:7

**exercised**
113:11



**exhibit**
  13:25
  14:3,7,11
  17:17,18,
  21,22
  18:6
  19:9,11
  20:22
  26:8,11,
  13,18
  29:15,18
  36:13
  37:4,5,6,
  7 44:9,14
  46:3
  48:8,9,12
  50:16,17
  51:7,8
  72:3,6
  76:6
  78:11,16,
  18,23
  79:4
  85:11,13,
  15,17,21,
  25 86:6,
  11,19
  87:1,5,7,
  9,11,16,
  19,24
  90:7,9,
  13,15,19,
  23 91:3
  92:25
  93:2,5,7,
  14,20
  94:1,4,6,
  9,16,22
  96:22,24,
  25 97:2,
  5,10,16
  99:11,13,

  17,19
  100:18,
  20,23,25
  101:4,6,
  7,9,11,
  13,21,23
  102:19
  103:3
  104:2,9,
  22,24
  105:3,5
  106:9,11,
  14,22,24
  107:2,4,
  10,12,16,
  22,24,25
  108:1,3,
  5,8,10,
  12,16,18,
  22 109:7,
  9,11,13,
  17 110:2,
  20
  111:10,
  12,13,16,
  23,25
  112:18
  121:18,19

**exhibits**
  17:12
  75:15,25

**existing**
  39:16,17
  40:2
  45:1,9,20
  58:18

**expectatio
n**
  36:21

**expected**
  30:7
  31:24
  35:12

**external**
  115:13
  119:6

**extra**
  57:11

─────────────
        F
─────────────

**fact**
  30:16
  88:22

**factor**
  71:8
  73:10,15

**factors**
  71:13,17

**factual**
  112:9,14

**Fair**
  11:21

**fairly**
  110:21

**familiar**
  37:13
  61:8
  122:14

**features**
  68:14

**February**
  109:15

**Federal**
  8:15 17:4

**feed**
  11:23

**file**
  11:7 56:3

**filed**
  16:11,12
  26:7
  108:15
  109:15

**files**
  76:14

**final**
  68:10
  71:6

**finance**
  72:24

**find**
  14:2
  71:24

**fine**
  18:8

**finished**
  67:23

**flexibilit
y**
  109:2

**flexible**
  29:25

**Floor**
  13:21

**focused**
  74:3

**focusing**
  20:13
  26:25
  68:14

**Foerster**
  9:1,7
  76:23

**folks**
  54:16
  64:19

**follow**
  25:7 30:8
  33:6
  39:19

**follow-up**
  76:24
  117:6

**follow-ups**
  117:10

**Folsom**
  80:13,23

**Folsom's**
  80:17,19

**force**
  12:23

**form**
  15:14
  22:22
  23:25
  27:22
  31:15
  46:8,19
  47:16
  50:5
  52:5,24
  59:23
  62:13
  63:6 64:7
  65:8
  66:23
  110:9



**formal**
63:3

**forming**
73:1,6,25

**forms**
46:21

**foundational**
20:8

**free**
54:21
55:8,16
102:13
103:11,20
113:23
114:3

**freely**
39:5  42:8

**front**
14:4,21
18:4
26:15
37:5,7
48:10
50:18
85:14
94:7
104:3
106:15

**full**
12:10
24:12

**full-time**
31:6,8

**fully**
61:8

**functions**

70:8

---
**G**
---

**gave**
26:17

**GCC**
106:13,21

**general**
26:1
55:12
81:19
82:21
83:25
85:2

**Generally**
80:22

**geographic**
20:8

**gestures**
13:15

**give**
17:2
110:4

**global**
12:16
26:1
30:15
38:2
56:14,22
77:3,8
104:7
105:6
116:10
118:9
122:4

**globally**
24:15,24

25:12,24
29:8
77:24
80:21

**good**
12:7
14:22
19:19
23:17
68:5,8
73:17,19
88:14,17
91:15,18
95:11,14
98:2,5
122:25

**Goring**
8:14
9:13,16
12:7,12
76:21
86:10
97:3
118:2
120:23

**GPT**
11:24

**Grand**
37:11
44:17

**grayed-out**
79:8

**greater**
22:24
78:8

**Gretna**
37:10,22
44:17

**guess**
47:2,8

**Guideline**
55:18

**guidelines**
29:12,21
30:4,8,
14,19,23
49:4
50:10
56:3
59:20
60:1
64:18,19
101:15,17
102:12
103:10,18
104:15
105:7,8,
24

---
**H**
---

**half**
77:6

**hand**
9:15

**handbook**
33:7
39:20

**handle**
40:11

**happen**
58:18

**happy**
56:8

**Harahan**
37:10

44:16

**head**
80:14,18

**header**
109:16

**heading**
88:1  91:4
94:25
108:14

**headquartered**
78:4

**headquarters**
52:13
120:15

**hearing**
16:13
117:13

**heavy**
59:6

**held**
16:16
77:5

**helps**
68:19

**higher**
54:13

**highlighted**
55:6
57:25
58:15
72:13,16

**hire**
116:4



TIJERINO vs SPOTIFY USA, INC.
Lindsey Goring - 30(b)(6), 08/14/2025          Index: hired..information

**hired**
  23:11
  84:3
  93:11
  95:22
  98:15
  116:14,19
  119:18

**hiring**
  23:7 24:1
  85:19
  119:7,8

**history**
  84:3

**home**
  11:18
  31:7,8,17
  32:9,13,
  17,24
  39:11
  41:9,22
  44:21
  45:11,14
  48:16,18
  50:3
  55:24
  57:1
  60:8,25
  61:5,14
  91:9
  100:12
  115:12

**homes**
  79:17
  113:8,12,
  15
  114:14,
  18,24
  115:8

**hoping**
  110:25

**hours**
  13:2
  36:24
  102:15
  103:8,14,
  22
  104:13,18
  116:3

**house**
  39:16

**houses**
  40:1
  45:9,20

**housing**
  114:9

**HR**
  12:16
  34:5 36:2
  40:19
  62:17
  65:13
  77:3,8
  81:7 82:9
  83:13
  86:16,17
  118:11

**HR's**
  39:12

**HRBP**
  33:10
  53:17
  54:4
  60:20
  64:23
  65:3
  118:15

**HRBPS**
  80:15

**hub**
  74:14
  120:14

**human**
  44:2
  60:20
  80:14
  118:13,15

**hunger**
  75:6

———————

**I**

———————

**identifiable**
  10:8 21:6
  23:5 25:3
  74:25

**identified**
  25:23

**identify**
  25:8,9
  49:14
  115:7

**identifying**
  21:5
  23:4,18,
  20 24:8,
  10,17,19
  25:2,16,
  18 70:18

**identity**
  80:6

**Ignoring**
  109:16

**impact**
  29:25
  100:5

**impair**
  13:7

**implication**
  54:16,17

**implications**
  72:23

**important**
  72:19
  115:22

**importantly**
  75:16

**in-house**
  9:3,10

**in-person**
  69:10,13
  72:19
  74:4

**Inc.'s**
  111:13

**incidental**
  68:21

**include**
  51:25
  81:17
  82:19
  83:23
  84:25
  102:17
  103:16,24
  104:20

**included**

  26:8

**includes**
  20:24
  31:3
  44:14
  110:23

**including**
  18:22
  29:5,8
  35:22
  43:8,13
  44:16
  47:13,18
  75:24
  101:18

**inclusive**
  49:20

**incorporated**
  37:10,14
  44:14

**increases**
  121:19

**individual**
  21:5
  23:19
  24:9,18
  25:2,17

**industry**
  70:2 71:2

**influence**
  13:5

**information**
  10:9,10,
  13,19
  11:1,5,23
  15:12



TIJERINO vs SPOTIFY USA, INC.
Lindsey Goring - 30(b)(6), 08/14/2025          Index: infringement..label

68:18
75:1
78:13
80:5
109:16

**infringement**
68:14

**initial**
85:19

**initially**
84:3 85:4
93:11
95:22

**instance**
56:17
58:7 59:1
61:1
64:15
109:21
119:23

**instant**
16:16

**instructed**
15:25

**insurance**
48:24
49:25

**intending**
11:23

**intent**
14:9

**intention**
116:4

**inter-u.s.**
62:2,9

**interactions**
114:22
115:2

**interest**
16:20
25:13
73:8

**internal**
10:13
49:7
119:7,8

**international**
121:25

**internationally**
34:2

**interrogatories**
111:15,21
119:1

**interrogatory**
75:22
112:10,
15,19

**interviewing**
74:18

**introduction**
17:17

**inventory**
114:12

**involve**
37:1

69:2,10,
16,25
70:7,17

**involves**
44:1 71:1

**Isle**
37:11
44:17

**issued**
16:14

**issues**
81:14
82:16
83:20
84:22

**italics**
103:4

**items**
40:7

___

**J**

**James**
22:3

**Jamie**
84:14

**Japan**
108:2,7

**Jean**
37:11

**Jefferson**
20:23
21:16
37:9,21
44:18

**job**
23:2,7,

11,21
24:1 63:1
69:10,15
81:11
82:13
83:17
84:18
85:5
106:19
107:7,19
108:7,19
109:10,
13,19,25
110:21,
23,25
111:2,4
116:14
119:21

**jobs**
119:9,11,
14,17

**John**
21:1 22:5

**joining**
9:6

**Judge**
117:13

**July**
17:11
18:18,19,
24 26:7
112:6

**jump**
29:11

**June**
8:16
16:13,15
18:17,20
91:5,9

95:1,5

___

**K**

**Katarina**
86:13,15
87:4,22
91:1
93:19,25
94:20
97:15

**Katie**
81:7

**Kenner**
37:11,21,
22 44:16

**Kiteworks**
76:13

**knowledge**
15:12
24:10,19
27:9,17
28:15
31:19
112:11,16
122:8

**Korea**
27:20
28:18

**Kyle**
9:1 76:21

___

**L**

**LA**
109:21

**label**
106:12,



20,25
107:8,13,
20

**labels**
10:22

**Lafitte**
37:11
44:17

**Lafourche**
20:24
21:18

**land**
108:23

**language**
31:10,12
33:11
39:22

**large**
76:14

**larger**
57:12

**launch**
74:2

**lead**
108:12,19
109:11

**leader**
81:10

**leaders**
82:12
83:16
84:18

**lease**
113:6

**leased**
113:10

**leasing**
80:21

**led**
23:7

**leeway**
57:12

**left-hand**
90:22

**legal**
56:13,22
105:11

**Lemelle**
117:13

**lets**
101:19

**letter**
24:3
85:19,22
86:2
93:11

**level**
54:12

**licensing**
122:1

**limited**
8:16 17:5
20:1,11
44:16

**limits**
28:21

**Lindsey**
8:13 9:16
12:12
74:17
118:5

**Linna**

9:3

**list**
115:11
119:8,9,
13

**listed**
15:4
56:14,22

**listing/
hiring**
23:2

**litigation**
76:24

**live**
22:24
23:15
41:20
47:20
52:7 53:4
64:16
102:13
103:12
108:23
113:24
114:4

**living**
115:17

**local**
31:6
68:17
69:2,7,
11,13,16
70:1,7,18
71:2,7,
13,17,18
73:10

**located**
24:11,20

25:6,18
32:16
36:4
38:23
42:17
44:11
49:18
50:7
102:9
103:7
104:12
106:21
107:8
118:17,
18,20

**location**
21:10
23:21,22
29:5
33:2,17,
18 34:19
35:4,6,
13,17,21
39:16
40:2,24
41:2,3,6,
12 45:4,
9,21
48:17,23
49:14
50:3,11
52:19
53:1
54:3,14,
20,22
55:10,24
64:4,12,
24 65:6,
16,24
66:8,15,
16,19,21

67:12,15
73:2,7,11
81:14
82:15
83:2,19
84:21
100:6,10
102:3,8
103:5
104:10
109:4

**locations**
26:22
30:22
33:21
49:9,10,
14 50:1
51:3,16
53:16
64:14
100:16

**lock**
35:15

**Logan**
82:9

**London**
118:21

**long**
34:14
77:5
102:14
103:13,21
104:17
109:4
116:2

**lot**
117:12,14

**Louisiana**
8:6,19



TIJERINO vs SPOTIFY USA, INC.
Lindsey Goring - 30(b)(6), 08/14/2025                    Index: lunch..market

10:16
15:9,17
16:19
17:7
18:13,16
20:4,12,
17,20
22:24
23:13,16
24:12,21
25:7,19
26:5
27:11
29:3,9
30:12,19
32:4,17
34:16,21,
25 36:5,
23 38:24
39:3
41:7,11,
13,23
42:8,17
44:12,15
45:11,13
46:10,11
47:19,22,
23,24
48:1,2
49:19,22
50:23
51:2,16,
20,25
52:8,18
53:3,4,
11,20,24
54:2,6,
10,25
55:14,23
56:12,25
59:13,18
60:7,18

62:2,8
63:1,8
64:2
66:8,13,
14,19,25
68:12
69:1,6,8,
23 70:4,
11,14,21,
24 71:5
73:19
74:8
79:2,6,9,
11,13,15,
17,20,25
80:7,25
81:1,25
83:1 84:6
85:7
87:14
88:8,21,
25 89:2,
7,15,19,
20 90:5
91:9,23
92:1,3,8,
12,13,23
94:14
95:5,18,
21,24
96:1,5,
16,20
97:22
98:9,12,
17,20,24
99:9
100:6,8,
14 101:18
109:14
112:24
113:4,8,
12,15,16,

18,21,23,
25 114:3,
9,11,16,
19,21
115:1,5,
9,16,18,
21,22
116:6,7,
12,13,16,
18,20
118:23
119:20
120:1,7,
8,13,23
121:1,3,5
122:3

**lunch**
75:8

—————————

M

—————————

**made**
33:8 34:4
53:16
88:24

**mail**
38:10

**main**
35:23

**maintainin
g**
69:17
71:1
119:20

**maintains**
68:11

**majority**
31:5,8,25

**make**
9:25
26:9,17
28:24
29:16
32:11,13
35:25
38:18
40:11
51:8
60:13
61:2 67:2
74:13
76:1

**making**
17:16

**management**
110:8

**manager**
12:17
33:10
34:5
36:16,21
37:25
38:15,25
39:7,12
40:18,19
44:2,4,6,
23 45:18
48:19
49:25
50:8,24
51:5,18,
21,23
53:17
54:4 56:4
60:19
64:23
65:3,13
77:4,8

106:12,
21,25
107:8,13,
20

**manager/
hr's**
45:24

**managers**
43:24

**Manuel**
8:4,24
12:8

**map**
79:1,4

**March**
97:18,22

**marked**
17:21,22
26:11
37:6 48:9
50:17
78:11,16
85:11
87:5 90:7
92:25
94:1,3
96:22
99:11
100:18
101:4
104:22
106:9,22
107:10,22
108:8
109:7
111:10

**market**
69:21
108:1,6



TIJERINO vs SPOTIFY USA, INC.
Lindsey Goring - 30(b)(6), 08/14/2025          Index: marketing..move

| | | | | |
|---|---|---|---|---|
| **marketing**<br>114:13 | 49:25 | **mix/office**<br>55:25 | 11:20<br>12:2 | 109:8<br>111:11 |
| **markets**<br>83:10,14,<br>21 102:25<br>103:11 | **meetings**<br>69:11,13<br>96:6<br>**memory**<br>13:7 | **mode**<br>31:1,4,<br>10,12,17,<br>20,24 | 14:6,13,<br>20 15:13<br>17:25<br>18:7<br>19:3,4,8, | 117:4<br>120:19,22<br>121:7<br>122:21 |
| **matched**<br>23:22 | **mention**<br>41:14,15 | 32:5,9<br>33:4,16,<br>21 34:15 | 12 22:21<br>23:24<br>26:12 | **morning**<br>12:7 |
| **materials**<br>114:13 | **mentioned**<br>9:24 40:8<br>118:25 | 37:2,24<br>39:10,15<br>45:4,8, | 27:21<br>28:6<br>31:14 | **Morrison**<br>9:1,7<br>76:22 |
| **matter**<br>8:4 12:9<br>13:24<br>17:3 36:2 | **middle**<br>61:13<br>72:1,14 | 17,19,23<br>52:19<br>53:1,15<br>54:22,25 | 46:7,18<br>47:15<br>50:4<br>52:4,23 | **motion**<br>16:12,16<br>**move** |
| **matters**<br>112:9,14 | **mind**<br>58:2 | 55:4,10<br>60:8<br>62:4,10 | 59:22<br>62:12<br>63:5 64:6 | 23:13<br>27:2,5,<br>12,18 |
| **Matthew**<br>80:13,17 | **minutes**<br>75:9 | 63:12<br>65:11<br>73:16,20, | 65:7<br>66:22<br>67:22 | 28:3,16<br>30:18<br>32:13 |
| **maturity**<br>29:14,24 | **Mississipp**<br>**i**<br>105:20 | 22<br>**Monster**<br>110:22 | 68:3<br>72:2,7<br>74:19,22 | 33:24<br>34:8,13,<br>23 35:8, |
| **meaning**<br>31:5,7 | 106:1 | **months** | 75:13,20<br>76:4,9, | 17 36:15<br>37:1,21,<br>22,25 |
| **means**<br>27:10<br>39:22<br>46:23<br>58:21<br>66:3 | **misspoke**<br>28:8<br>**mix**<br>31:5,7,17<br>32:9,10,<br>13,18 | 33:3,6,<br>21,25<br>34:22<br>35:6,13<br>39:20<br>40:24 | 20,22<br>78:10,17,<br>22 85:12<br>86:5,9<br>87:6 90:8<br>93:1 94:2 | 38:14<br>39:4,5,<br>10,23<br>40:4,14,<br>15,23 |
| **meant**<br>27:24<br>61:18 | 33:2<br>39:11<br>41:9 | 41:13<br>52:20<br>53:6 57:1 | 96:23<br>99:12<br>100:19 | 42:7,9<br>43:20,24<br>44:24 |
| **medical**<br>109:22 | 45:11,14<br>48:16<br>55:25 | 100:8<br>117:1 | 101:5<br>104:23<br>106:10,23 | 45:12,16,<br>23 46:10<br>47:10,11, |
| **medication**<br>13:1 | 57:1 60:8<br>100:12<br>109:21 | **Mooney**<br>8:25 9:1,<br>23 10:4 | 107:11,23<br>108:9 | 12,14,25<br>51:19,21<br>53:3,7,8, |
| **meet** | | | | |



22 54:5,
7,10
56:12,18,
21 57:5,
13,16
58:1
59:8,18
60:14,21
62:14,20
65:19
66:2
67:18
74:6,13
81:24
82:2 83:2
84:5,8
85:6,10
87:13
89:4,18
92:11
94:13
95:23
96:15
98:16,23
100:6
105:24
116:6,8,
23 117:2
119:19,25
120:6

**moved**
41:15
46:2
65:23

**moves**
34:7
40:18
41:25
42:5,12
43:17
56:16

58:17
59:9
62:2,9
65:16

**moving**
34:1
36:7,11,
19 38:23,
25 39:8,
15 40:1,
17 44:22
45:1,7,9,
20 47:5
50:15
57:20,25
58:4
59:21
60:9
63:18
65:10
115:17

**municipali
ties**
37:10,14

**music**
70:1

**musicians**
69:3

_____

N

_____

**names**
121:13

**national**
116:10
121:25
122:4

**nature**
46:16

72:24

**necessaril
y**
46:20
48:5
57:23

**needed**
61:16

**needing**
113:25

**networking**
70:8

**nods**
13:15

**North**
27:20
28:18
105:20
106:1

**note**
102:2
103:2
104:8

**noted**
16:2

**notice**
13:24
14:8,11
15:5
17:2,19
35:22,24
72:21

**notify**
38:8
42:10

**November**
77:22

**number**
21:16,18,
20,22,24
22:1,3,5,
7,9,11,13
53:25
74:10
81:21
82:23
84:2
87:13
90:17
93:3
94:13
97:9
99:14
100:21
101:7
102:17
119:23
121:14,24

**numbers**
86:7,22,
23 90:10
94:4
96:25
104:25
115:12

_____

O

_____

**oath**
12:22

**objection**
15:14
16:2
22:22
23:25
27:22
31:15

46:8,19
47:16
50:5
52:5,24
59:23
62:13
63:6 64:7
65:8
66:23
117:12

**Objections**
111:14

**objects**
15:25

**obligation
s**
52:2

**obtain**
49:24
50:8 63:2
65:5

**obtained**
67:18

**obtaining**
41:25
42:13
46:4

**occur**
57:21

**off-site**
72:18

**offer**
24:3
85:18
86:1
93:10
101:3
109:2



**offers**
 24:4
 115:15

**offhand**
 25:15

**office**
 24:3
 31:5,6,17
 32:9,13,
 15 45:13
 48:18
 50:3
 63:2,3,4,
 7,11,14,
 18,19,20,
 23 74:5,7
 78:5
 80:21,25
 89:12
 112:23
 113:2

**officer**
 86:16,17

**offices**
 74:14

**official**
 20:22
 66:16

**Ohio**
 92:5

**on-boarding**
 70:18

**ongoing**
 68:20

**online**
 9:6,10

**open**
 16:17
 76:8

**openings**
 23:7
 109:13

**operate**
 36:18
 59:4
 112:22

**operated**
 113:1

**operates**
 109:5

**Operation**
 108:2

**operations**
 68:17
 108:6

**opportunity**
 13:23

**optimizing**
 69:17

**option**
 41:10

**options**
 31:4,17

**oral**
 117:13

**order**
 8:17 11:3
 16:14
 17:18
 18:3,17,
 18,19
 19:2,5,7,

 14 20:1,
 10 31:22
 67:3
 106:3
 117:23

**orders**
 18:9
 19:16

**org**
 81:10,12
 82:10,12,
 14 83:16
 84:18

**Orleans**
 20:24,25
 21:20
 22:17,25

**outreach**
 69:25

**overhead**
 60:14

**overlap**
 59:7

**oversee**
 77:9
 81:13
 82:15
 83:19
 84:21

**oversees**
 80:20
 84:17

**owned**
 113:1,10

─────────
     **P**
─────────

**P.M.**
 123:1

**pages**
 18:18,20
 61:24
 85:22,23

**paid**
 109:23
 110:9

**paperwork**
 57:11

**parentheses**
 39:17

**parents**
 11:18

**parish**
 20:18
 21:12,13,
 16,18,20,
 22,24
 22:1,3,5,
 7,9,11,
 14,17
 37:9,21,
 23 44:18
 78:12

**parishes**
 20:21
 21:7

**part**
 29:21
 31:20
 43:3
 48:12

 57:11
 64:18
 65:2
 73:25
 88:11
 91:12
 95:7
 97:24
 111:7
 113:8,14

**participating**
 70:7

**parties**
 8:20
 114:19,24
 115:4

**partner**
 34:5 44:3
 60:20
 81:8
 82:10
 83:14
 118:15

**partnered**
 110:9

**partners**
 70:19
 71:3
 80:15
 114:18,23
 115:3
 118:14

**partnership**
 107:8,20
 110:9



TIJERINO vs SPOTIFY USA, INC.
Lindsey Goring - 30(b)(6), 08/14/2025          Index: partnerships..policy

**partnerships**
  106:12,
  20,25
  107:13
  118:12

**passed**
  33:6

**past**
  23:6 57:9
  110:11,14

**paste**
  111:8

**pay**
  28:25

**payroll**
  28:25
  40:12
  61:9,18
  65:21
  67:3
  105:13

**payrolling**
  36:1
  40:10
  58:5,8,
  10,12
  60:12

**PDFS**
  76:3

**pending**
  117:5

**people**
  119:14
  120:11

**perception**
  13:7

**perform**
  31:25
  32:2
  50:22
  51:2,15
  52:17
  54:1
  55:22
  56:11
  59:5,13,
  17 60:17
  62:1,8,25
  64:1
  68:25
  69:23
  70:23
  90:3
  92:21
  96:18
  99:7

**performance**
  73:1,6,15

**performing**
  49:8
  89:14
  92:7 96:4
  98:19

**period**
  33:1,15
  35:13
  47:25
  53:16
  99:25
  100:5,15

**permission**
  39:23
  40:14,23
  42:1,13
  43:17,22

  46:4,12
  47:14
  48:1
  67:15,19
  110:4,15

**permitable**
  17:15

**permitted**
  105:9

**person**
  66:24

**personal**
  10:9 21:6
  23:5,19
  24:9,18
  25:3,17
  33:8
  34:10
  72:24
  80:5
  115:12

**personally**
  10:8
  74:25

**perspective**
  35:25
  38:17
  40:10,12
  48:24
  58:6
  64:20

**Philippines**
  107:14,21

**phone**
  115:12

**picked**
  28:8

**place**
  51:9
  65:19
  88:2 91:3
  94:24
  97:17
  115:9

**places**
  118:19
  122:10

**plaintiff**
  8:24 17:1

**Plaintiffs'**
  111:14

**plan**
  39:9
  45:16,22
  51:3,16

**planning**
  108:13,20
  109:12

**plans**
  36:15
  38:14
  44:24

**Plaquemines**
  20:25
  21:22

**platform**
  76:13

**play**
  113:14

**pleasure**

  74:17

**point**
  13:10
  35:7
  53:21
  72:16

**policies**
  25:6,15,
  21,23
  26:2
  43:2,7,13
  46:24

**policy**
  23:23
  24:7,13,
  16 25:1,
  13,22
  26:1,4,22
  27:12
  28:21
  29:4,10,
  13,23
  30:3
  31:3,11,
  13 32:8,
  25 33:13
  35:1,2,8,
  11,16,20
  36:10
  37:20
  38:13,20,
  23 39:21
  40:21
  41:24
  42:2,12,
  14 43:8,
  14,21,23
  44:10,22
  45:7
  46:5,15,



TIJERINO vs SPOTIFY USA, INC.
Lindsey Goring – 30(b)(6), 08/14/2025          Index: portion..purpose

21 47:3,
9,17
48:5,13,
22 49:4,
6,14,24
50:9
54:12
59:18
60:2
61:12
64:3,11
65:2,4,15
74:3
77:15
81:22
84:5 85:7
99:23
100:1
101:20
105:24
114:6

**portion**
51:7 86:1
114:8

**portions**
79:8

**position**
11:10
12:13,16
23:20
77:2,3,5
80:17
108:23

**possession**
113:7,11

**post**
109:10,
13,20,22,
24,25
110:24

**posted**
23:6
110:19
111:8

**posting**
23:11,21
24:2
107:19
108:7,19
109:19
110:5
116:15

**postings**
106:20
107:7
110:23,24
111:3,4

**potential**
47:13
72:23

**potentially**
66:4

**pre-covid**
74:4

**preclude**
100:15

**preference**
55:11

**premarked**
17:12

**prepare**
80:10

**prepared**
15:10,15
17:13
18:21

**prescription**
13:1

**presence**
68:20
69:21

**present**
11:15
34:22

**pretty**
42:22

**previous**
38:12

**previously**
40:9 74:3
81:23
98:14,15

**primarily**
60:11
92:5

**primary**
48:18
60:24
61:5,13

**printed**
14:15

**Privacy**
80:4

**pro**
8:24 12:8

**problems**
72:25
73:5

**Procedure**
8:15 17:4

**procedures**

36:1

**process**
23:2 33:6
34:18
39:19
44:1 63:3

**produced**
17:10
18:24
75:23
79:24

**product**
68:13

**production**
86:7,22
90:10
93:3 94:4
96:25
99:14
100:20
101:6
104:25

**products**
114:17

**professionals**
69:4

**profile**
121:17

**program**
12:16
15:9,17
20:5
77:4,8
89:5

**programs**
77:10,11,
12

**projects**
72:19

**promote**
122:12

**promotional**
114:12

**prompt**
61:6,15

**proper**
61:3

**properly**
40:12
67:3

**protective**
11:3

**provide**
29:1
101:2
102:12
103:10,19
104:15
105:13

**provided**
105:23

**provider**
58:8

**Provine**
9:5,6
76:11

**public**
11:7
110:23
111:5
115:13

**purpose**
16:10,17



20:1
68:21

**purposes**
21:9
22:19

**pursuant**
8:14 17:3

**put**
30:17
40:5 44:3
48:3
53:21
54:6,7,8
65:11
66:12
82:2 83:2
85:8
100:8
120:5

**putting**
43:22
44:5

---

**Q**

---

**question**
13:8
15:25
35:11
38:12
40:13
41:4 43:6
51:11
53:14
56:20
57:4 60:4
62:5
63:22
71:6,10
73:4,13

77:1

**questionin
g**
17:20
19:20

**questions**
11:13
13:8,11
16:5 31:9
36:9
38:12
50:21
59:11
61:20
63:20,25
68:10,23
75:3
76:24
112:21
117:5,7,
12,19,24
120:18,20
122:20

**quick**
10:1
11:13
75:6,8

---

**R**

---

**raise**
9:14

**Raviv**
9:9,10

**read**
16:9 18:3
71:25
72:15

**reading**
27:2 30:2
31:16
58:20

**reads**
88:2

**real**
80:14,18
112:23
113:3

**reapply**
33:4
39:15,25
45:2,8,19

**reapplying**
45:15

**reason**
10:25
11:9
35:23
53:9,22
54:9,23
55:14
73:21
82:1
83:3,5,6
84:7 85:9
89:13,25
92:6,18
96:3,11
98:18
99:4

**reasons**
36:17
60:12
80:4

**recall**
100:2

**receipt**
16:25

**receive**
75:17

**recognize**
78:23
85:15
86:25
87:9,18
90:13,21
93:7,16,
22 94:9,
17 97:5,
12 99:19
100:23
101:11
105:3
106:17
107:4,16,
24 108:3,
16 109:17
111:18,20
112:1

**recommend**
44:4

**record**
8:1,3,21
12:11
13:16
15:22
17:11,16
20:17
22:16
28:20
35:1
74:23
75:4
76:18
86:6
122:23

**recorded**
66:15

**records**
67:13

**recruiting**
70:18
77:19
110:8

**recruitmen
t**
77:11

**redacted**
10:6
85:18
88:3
90:16
93:10
97:8
99:22
101:14
105:6

**redundant**
35:10

**refer**
41:6
49:12
79:19

**reference**
17:20

**referenced**
18:24
19:17
23:22
99:25

**referencin
g**
26:6 51:6



LEXITAS®

TIJERINO vs SPOTIFY USA, INC.
Lindsey Goring - 30(b)(6), 08/14/2025          Index: referred..request

**referred**
79:25

**refers**
14:1
22:17
41:9 74:2

**reflected**
24:4
103:2
104:8
110:19

**region**
27:5
45:17
57:3,22
58:19
59:2 78:8
102:9
103:6
104:12

**regional**
56:16

**regions**
57:21
58:17,24

**register**
57:9
106:2

**registered**
27:6,10,
14,19
28:4,17,
23 40:9
56:13,17,
21 57:6,9
67:1,2
102:14
103:13,21
104:17

105:12,
15,16,19
106:5

**reimburse**
114:8

**relate**
38:17
77:14,18
105:9

**related**
83:9
84:10
86:3

**relates**
15:7
18:23
20:3 23:3
38:16
48:20
69:8 71:5
80:20
111:22

**relating**
10:11
81:3 82:5
120:25
121:4

**relation**
54:15
55:12

**relationsh
ip-
building**
70:1

**relationsh
ips**
73:1,6,25
77:18

**relative**
17:6

**relevant**
10:13
68:18
101:17

**relocate**
28:22
63:9
73:22
89:23
90:1,5
92:16,19,
22 96:9,
12,19
99:2,5,8

**relocating**
63:4

**relocation**
39:21
61:16
71:9,14,
17

**remain**
33:5
34:14
35:3,5,12
45:14
52:3,7
70:25

**remember**
25:10
42:20

**remote**
15:7,16
18:13
20:3
22:23
34:20

39:3
45:10
46:9
47:18
49:21
52:9
53:10,23
55:13
56:24
68:21
69:5 74:9
79:14,21,
25 80:7
100:5,13
113:8,12,
15,19,23
114:3,9,
12,17,22
115:2,7,
11,16,21
116:7,13,
18 120:24
121:3

**remotely**
36:22
72:17

**remove**
10:8

**rent**
113:6

**rented**
113:10

**repeat**
43:9
51:11
62:5
71:10

**rephrase**
13:12

57:4

**reporter**
8:2 9:12,
19 13:15
28:7,8

**representa
tive**
8:12 15:3
19:24
25:5

**representa
tives**
118:14

**representi
ng**
9:2

**represents**
76:23

**request**
30:17,21
35:21
40:6,22
43:22
44:3,5,7
48:3
50:21
51:10,23
53:8,10,
21,23
54:6,8,9,
25 55:7
57:17
59:25
60:9,18,
24 65:12
66:12
71:9,23
72:13
73:20



TIJERINO vs SPOTIFY USA, INC.
Lindsey Goring - 30(b)(6), 08/14/2025          Index: requested..rules

82:2 83:2
84:7
85:8,9
89:9,23
92:16
96:9 99:2
100:9
119:3
120:5

**requested**
119:19,25

**requests**
54:3
71:15

**require**
32:10
52:2,6,18
54:3,18
63:1
69:7,12
70:3,14,
20,25
71:4
88:20
89:17
91:22
92:10
95:17
96:14
98:8,22
114:11,
16,21
115:1
116:5

**required**
10:15
24:12,15,
21,25
25:7,25
29:3,9

30:13
31:20
32:4
34:17
35:3,22
37:24
42:1,13
43:17
46:4
51:4,17
54:14
56:4,6
60:5

**requiremen
t**
36:25
50:25
108:21

**requiremen
ts**
36:3 52:1
59:16

**requires**
40:17
43:7,12
47:3
48:23
57:10
59:19
65:4
67:12

**research**
72:22

**reside**
10:15
50:22
51:1,14
52:17
54:1
55:22

56:11
59:12,16
60:16
61:25
62:7,24
64:1
68:25
69:22
70:23

**resided**
88:7

**residence**
64:25
113:20
116:19

**resources**
44:2
60:20
80:15
118:13,15

**response**
75:22
116:14

**responses**
111:14
112:10,
15,19

**responsibi
lities**
68:16
69:2,24
70:6,17
77:7,14,
17 80:19
81:9
82:11
83:15
84:16
90:4

92:22
96:19
99:8
120:24
121:4,24

**responsibi
lity**
81:3 82:5
83:9
84:10

**rest**
79:10

**restricted**
49:7,15
50:1

**restrictio
n**
67:14

**restrictio
ns**
29:5
49:17
50:11

**restricts**
16:23
18:15

**result**
46:17
48:6

**retirement**
109:23

**review**
13:23
16:25
30:7
59:15,19
60:1,5
67:6,9

**reviews**
66:9
67:13

**risks**
49:11

**role**
23:9
54:21
55:3,9,16
57:21
58:18
59:6 71:1
107:8
109:3
119:24
120:2,7

**role-
specific**
52:2

**roles**
54:13
55:25
59:3
68:15
116:2
118:23
120:10
122:9,11

**room**
11:19

**Roughly**
77:6,25
78:3,9

**rule**
8:11,14
42:4

**rules**
8:15 17:4



LEXITAS®

**Russia**
  50:12

---

**S**

---

**Saudi**
  106:21

**Schonfeld**
  84:14,17,
  21 85:3

**Schonfeld'
s**
  84:15

**scope**
  16:10
  17:6,15
  18:11
  19:2,14
  20:8,10
  117:20,25

**scrape**
  110:22
  111:2

**section**
  20:8
  26:21
  27:1,4
  29:12,19
  30:25
  31:1,4,
  10,12
  32:21,22
  33:12
  36:8,9,
  11,14
  38:23
  39:8,24

40:17
44:22
45:7 47:8
48:15,16
49:2
55:7,19
58:15
59:8
61:21
72:1,13,
16 109:1

**secure**
  48:18

**securely**
  76:15

**seekers**
  110:25

**select**
  31:20
  67:7
  119:15,16

**selected**
  31:23
  35:4

**selecting**
  113:14

**send**
  61:2
  76:14

**senior**
  12:16
  77:3,7

**sensitive**
  11:2

**sentence**
  88:2

**sentences**

63:17
72:15

**separate**
  45:3

**served**
  13:24

**serves**
  68:20

**service**
  14:19
  95:10
  108:13,20
  109:12

**services**
  69:18

**set**
  31:22
  32:12
  36:1
  55:23
  57:13,15,
  16 64:20
  68:10

**sets**
  28:21
  47:12

**setting**
  69:17

**short**
  72:21

**show**
  74:19

**shown**
  20:21
  79:4,8
  101:23
  102:1,6,

23 104:5

**shows**
  47:9

**sic**
  27:17
  32:24
  66:20

**side**
  25:12
  90:22

**sign**
  42:25
  62:3,9,21
  86:4
  112:5

**signature**
  86:19,25
  87:3,18,
  21 90:21,
  25 93:14,
  18,21,24
  94:16,19
  97:11,14
  111:25
  112:1,3,4

**signed**
  111:21
  112:8
  119:1

**simply**
  38:8
  119:25

**sir**
  10:3
  11:18
  12:1
  14:12
  19:11

**26:18**
  28:2,12
  72:10
  117:10

**soliciting**
  116:15

**solved**
  117:14,17

**someone's**
  73:16

**sooner**
  33:25

**sounds**
  35:10
  55:1
  119:22

**sourced**
  122:5

**space**
  80:21,25

**spaces**
  63:20

**speak**
  80:9 81:2
  82:4 83:8
  84:9

**Special**
  33:8 34:3

**specific**
  13:25
  29:15
  30:14
  50:12
  51:7 52:9
  70:4,10
  102:8
  103:6



TIJERINO vs SPOTIFY USA, INC.
Lindsey Goring - 30(b)(6), 08/14/2025        Index: specifically..state

104:11
120:12

**specifical
ly**
36:18
38:2
41:10,22
42:21
61:19
70:13,21
95:10
111:1
116:11
120:25
121:5
122:1,2,
17

**speculate**
55:2

**speculatin
g**
55:5

**spoke**
80:13,14

**Spotify**
8:4,13,18
9:2,4,8,
11 10:6,
11,12,14,
18 12:15
15:4,7
19:23
20:3
21:11
25:11
27:6,10,
18 28:4,
16,23
32:5 38:8
49:7

51:1,14
52:16,18
54:1
55:9,17,
21 56:10,
13,21
58:7,9,
11,13
59:16
60:16
61:25
62:7,24
63:2,25
68:11,24
69:6,12,
18,22
70:3,9,
14,20,22,
24 71:4
73:3 75:1
76:23
77:2,8,
21,23
78:1,4,7
79:12,16,
20,23
88:15,18,
20 89:14
90:4
91:16,19,
22 92:8
95:12,15,
17 96:5
98:3,6,8,
20 101:3,
17 102:14
103:12,21
104:17
105:9,15,
18,22
106:5
108:24

109:10,
13,19,21
110:1,4,
11,14
111:13
112:22
113:1,6,
10,14,18,
19 114:1,
8,11,16,
21 115:1,
7,11,15,
20 116:4,
14,22
118:16
119:6

**Spotify's**
16:18
17:7,10
20:11
24:13,21
25:4 26:3
31:11,13
33:12
38:22
46:5,11,
15 48:12
68:20
77:14,19
89:17
92:10
96:14
98:22
112:14
115:9,22

**spotify.
com.**
111:6

**SPOTIFYUSA
_VENUE_
000001**
86:8

**SPOTIFYUSA
_VENUE_
0020**
90:11

**SPOTIFYUSA
_VENUE_
0036**
94:5

**SPOTIFYUSA
_VENUE_
0044**
97:1

**SPOTIFYUSA
_VENUE_
0051**
101:7

**SPOTIFYUSA
_VENUE_
0064**
104:25

**SPOTIFYUSA
_VENUE_
0073**
99:15

**SPOTIFYUSA
_VENUE_
0077**
100:21

**SPOTIFYUSA
_VENUE_27**
93:3

**St**
21:1,2,24
22:1,3,5,

7

**stakeholde
rs**
29:25

**Standard**
8:9
36:19,24
52:10
59:4
109:5
116:3

**standing**
73:17,19
88:14,17
91:15,19
95:11,15
98:2,6

**start**
76:5 88:4
91:4
94:25
97:18
100:13

**started**
23:12
85:4 89:3

**starting**
58:3

**state**
8:21
12:10
15:8 21:7
35:1
38:1,7
39:4,6,9,
10,11,17,
23 40:2,
4,5,14,15
41:7



LEXITAS®

42:7,9
43:20
45:1,12,
24 46:11
47:6
48:1,2
51:19,22
54:5,8,10
56:12,21
57:6,10
59:21
60:10,14
61:6,7,
15,16,17
62:15
63:8
65:10
66:2 67:2
73:23
75:6
79:8,10,
13 81:1
89:19
90:1,5
92:12,19,
23 96:12,
20 98:24
99:5,9
102:13
103:12,20
104:17
105:25
113:25
116:23
117:2

**State-to-state**
59:9,18

**stated**
112:10,14

**statement**
10:1
63:17

**states**
8:5 20:19
27:4,15
29:13,23
32:25
33:24
34:12
35:11,16,
20 36:14
38:5,13
39:8,11,
14 40:10,
19,20,22
41:9,17,
21,24
42:6,12
48:16,22
49:2,6
57:8 60:8
64:16
65:15
78:2
105:14,
17,18
106:3,4,
6,7 109:4
114:5

**stating**
16:15
120:9

**stay**
39:9
45:23
117:22

**steering**
74:24

**store**
112:23
113:2
114:12

**strategy**
108:1,6

**strictly**
68:15

**studios**
69:3
122:11,16

**stuff**
121:21
122:12

**subject**
80:22
82:21
83:25

**submit**
50:20
55:6 60:8
63:21
71:23
72:12

**submitting**
30:9
51:23
59:25

**subscripti
ons**
83:9,14,
21 95:9
102:25
103:11

**substance**
13:1,6

**summarize**

47:7
49:23
67:11

**supporting**
71:1

**surprised**
44:6

**swear**
8:22 9:13

**switch**
33:7

**sworn**
9:17

**system**
38:9
62:17
66:15
67:14
76:14
119:8
120:4

**systems**
119:7

———————
T
———————

**Tab**
76:5,6

**talk**
15:15
33:9 34:9
44:5
122:11

**Tammany**
21:2 22:7

**Tangipahoa**
21:2 22:9

**tasks**
32:2

**tax**
48:24
49:25
54:16,17
56:14,23
57:6
59:19
61:6,9,
15,17
64:19
72:23
81:3,15
104:7,16
105:7

**taxes**
61:11
72:25

**team**
61:9
74:11
88:22
89:10
92:4
109:5

**teams**
74:10

**term**
20:18,19

**terminatio
n**
46:17,22
47:13
48:6

**terms**
24:12
42:18



TIJERINO vs SPOTIFY USA, INC.
Lindsey Goring - 30(b)(6), 08/14/2025          Index: Terrebonne..turn

**Terrebonne**
  21:3
  22:11

**territories**
  38:6 79:5

**testified**
  9:18
  42:16,20

**testify**
  13:3
  15:10
  17:13
  18:22

**testifying**
  15:3,6
  19:22
  20:2

**testimony**
  12:22
  19:25
  123:1

**Thailand**
  107:1,9

**theory**
  55:2

**thing**
  16:8 67:5

**things**
  45:3
  117:14

**thought**
  61:18

**ticket**
  63:3,21

**tied**
  50:21

59:11
120:7,14
122:2

**Tijerino**
  8:4,23,24
  9:20,21
  10:2
  11:14,17,
  25 12:4,
  6,8
  14:10,16,
  24 15:1,
  19 16:7
  17:2,23
  18:1,5,25
  19:6,10,
  18,21
  20:6 21:4
  23:1 24:6
  26:16,20
  27:23
  28:1,11,
  13 31:18
  37:8
  46:13
  47:1
  48:7,11
  50:14,19
  52:15
  53:12
  60:3
  62:18
  63:15
  64:9
  65:14
  67:4
  68:1,6,9
  72:5,9,11
  74:15,24
  75:10,16,
  17,18

76:2,7,
12,16
78:12,14,
20 117:6,
9 118:4
120:16
121:10,12
122:18,24

**time**
  8:9,10
  15:21
  24:1
  32:20
  33:11
  34:13,23
  35:2
  36:17,19,
  20 38:17,
  19 43:10
  48:23
  52:1,10
  53:8
  55:23
  59:4,6
  82:25
  86:17
  100:9
  102:8
  103:6
  104:11
  109:23
  112:8

**times**
  52:11
  121:25

**timezone**
  109:6

**title**
  108:25

**titled**
  26:22
  78:12
  85:23
  106:12,25
  107:12
  108:1,12
  109:9,11
  111:13,24

**today**
  8:8 9:2
  10:18
  11:15,24
  12:22
  13:3
  19:23
  99:24
  112:13

**today's**
  17:20
  22:20
  80:10

**tomorrow**
  53:22

**tools**
  69:18

**top**
  58:16
  109:12

**topic**
  8:17
  81:19
  85:2

**topics**
  15:4,11

**towns**
  79:6

**Trade**
  13:21
  78:6

**training**
  96:6

**transcript**
  11:8
  18:20
  19:16

**travel**
  48:15,20
  49:3,4,5
  50:6,9
  52:1,12
  72:18,20

**true**
  112:9,11,
  15

**truthfully**
  13:3 16:5

**turn**
  26:3
  85:13
  86:10,21
  87:7,15,
  23 90:18
  91:2
  93:2,13,
  20 94:15,
  21 97:10,
  16 101:6,
  21 102:19
  104:1
  106:11,24
  107:12,24
  108:10
  109:9
  111:23
  112:18



**type**
  33:2
  100:12

**typically**
  33:24
  44:4
  56:18
  57:9

—————

**U**

—————

**U.S.**
  13:22
  24:14,24
  25:11,24
  27:15
  29:7
  33:23
  34:12
  39:17
  40:3,20
  41:1,21
  42:9 47:6
  48:2
  53:2,8
  56:12,19,
  21 57:1
  59:9,18,
  19 62:15
  63:4,18
  64:16
  65:10
  66:2
  102:10
  103:7
  104:12
  117:3
  120:15

**Uh-huh**
  66:1

**uncontested**
  16:19

**underneath**
  55:19
  118:6

**understand**
  12:21
  13:10,11
  15:2,6,24
  19:22
  47:18
  60:1
  72:23

**understanding**
  11:5 20:2
  27:8
  61:10
  68:11
  79:3,7
  85:24
  102:22

**unforeseen**
  33:9

**unit**
  30:4,20
  54:13
  55:18,23
  59:20
  81:4,15
  82:6,17
  83:10,21
  84:11,20,
  23 88:11,
  13 91:12
  95:7,9
  97:24
  98:1
  102:11,25

  103:1,9,
  11,18,20
  104:14,16
  105:24
  118:6

**unit's**
  30:14

**United**
  8:5 39:11
  41:9,17,
  21 60:8
  78:2
  109:4
  114:5

**units**
  104:7
  118:9,16
  119:9,13
  120:10

**update**
  38:9
  45:21
  60:24
  61:6,15

**updating**
  61:5,13

**USA**
  8:4,13
  15:4
  19:23
  58:7,11
  78:4
  111:13

**users**
  49:7

—————

**V**

—————

**vary**
  25:10

**vendor**
  58:12
  110:8

**vendors**
  77:18

**venue**
  17:3
  68:19

**Venue-related**
  20:10

**Venue-specific**
  111:15

**verbally**
  13:14

**verification**
  111:24
  112:5,9

**versa**
  27:7

**version**
  85:18
  90:16
  93:10
  97:8
  99:22
  101:14
  105:6

**vice**
  27:6

**violate**
  46:24

**violation**
  42:1,4,14
  43:21
  46:5,15,
  22 48:5

**virtual**
  69:10,13
  96:7

**vouch**
  18:2

—————

**W**

—————

**W-2**
  38:10

**W-2S**
  61:2

**wanted**
  9:25
  37:21,22
  117:23

**wanting**
  38:18

**warehouse**
  112:23
  113:2

**warning**
  66:6

**Washington**
  21:3
  22:13

**website**
  20:23
  79:2
  110:24



TIJERINO vs SPOTIFY USA, INC.
Lindsey Goring - 30(b)(6), 08/14/2025                    Index: Westwego..year

111:1,5,9
121:18

**Westwego**
37:11
44:17

**wishing**
33:20

**withdrawn**
107:25
109:10

**withholding**
61:15,17

**withholdings**
61:7

**wondering**
119:12

**words**
26:25
57:14

**work**
10:15
15:9,17
16:24
18:15
20:5 21:9
22:19
24:13,15
25:21,25
26:4,21
28:21
29:4,13,
23 30:5,
9,15,17,
22 31:1,
3,4,5,7,
10,11,12,

13,17,20,
23,25
32:2,5,8,
24 33:4,
12,16,17,
21 34:14,
19,25
35:4,6,7,
13,15,17,
18 36:10,
24 37:2,
23 38:18,
22 39:10,
15 40:21,
24 41:3,6
42:11,24
43:8,14
44:10,21,
22 45:4,
6,8,17,
19,22,23
47:3,8,
20,22
48:13,17
49:8,13,
14 50:20,
22 51:2,
3,10,15,
16 52:10,
17,19
53:1,15
54:1,2,
11,22,25
55:4,6,
10,22
56:11,14,
22 59:13,
17,25
60:7,9,
17,18
62:1,3,8,
10,25

63:2,10,
11,12,13
64:1,2,3,
11,12,24
65:2,11
66:10,12,
16,20
67:8,12
68:17,22,
25 69:7,
23 70:23
71:9,14,
23 72:12
73:2,7,
16,20,21
74:4,9
77:10,14
78:8
79:17
81:11,13,
14,22
82:13,15,
16,25
83:14,17,
18,19,20
84:2,4,
19,21,22
85:7
88:2,20,
24 89:4,
14 90:1
91:3,22
92:2,7,19
94:24
95:17
96:4,12
97:17
98:8,14,
19 99:5,
22 100:1
101:1,18,
20,24

102:8,15
103:5,13,
20,22
104:6,11,
16,18
105:7,10,
23,25
106:3,6
108:23
109:2,4,
25 110:1
113:24
114:4,5
115:21
116:3,15
118:6
122:16

**work's**
23:22

**work-from-
home**
32:25
39:19
43:2

**Workday**
60:25
61:5,10,
14 62:17

**worked**
88:7 89:1
91:8
95:4,20
97:21
98:11,15
110:7,12

**worker-
related**
77:10

**workforce**

108:12,20
109:11

**working**
27:1 50:2
72:17
77:21
79:13
89:7
91:25
95:25

**workings**
61:9

**workload**
40:1

**works**
81:10
82:12
83:16
84:17
122:1

**world**
13:20
38:5 78:5

**written**
44:20
55:15
66:5

**wrong**
28:9
58:14

――――――――
Y
――――――――

**y'all**
119:6
122:12

**year**
77:6



**years**
  23:6
  53:20
  110:7,11,
  14

**York**
  13:21
  23:11,12
  24:3,4
  52:12
  63:10,13
  74:5,7
  78:5,8
  81:24
  84:4
  85:5,19
  88:23
  89:3,11
  93:12
  95:23
  98:16
  118:20
  119:19
  120:14

**York-based**
  74:11

**Z**

**Ziprecruiter**
  109:25
  110:1,4,
  10,12,15,
  16,18,22

**zone**
  36:17,20
  38:17,19
  52:1,10
  59:4,6

**zones**
  55:24
  102:8
  103:6
  104:11



WITNESS CERTIFICATION


    I, LINDSEY GORING, the undersigned, do hereby certify that I have read the foregoing deposition taken on August 14, 2025, and it contains a true and accurate transcript of the testimony given by me:


        (   )   No corrections.

        ( ✓ )   With corrections as reflected on the Errata Sheet(s) prepared by me and attached hereto consisting of ___1___ pages.


        _____
        LINDSEY GORING
        __8/19/25_____
        Date



LEXITAS®

**ERRATA SHEET FOR TRANSCRIPT OF**
**RULE 30(B)(6) DEPOSITION OF SPOTIFY USA, INC.**

**Name of Witness: Lindsey Goring**
**Deposition Date:  August 14, 2025**

*Tijerino. v. Spotify USA, Inc.*
**United States District Court**
**Eastern District of Louisiana**
**Case No. 2:24-cv-02290-ILRL-DPC**

I wish to make the following changes, for the following reasons:

| Page | Line(s) | Reason | Change From | Change To |
|---|---|---|---|---|
| 40 | 1 | Transcription error | workload | work mode |
| 58 | 22 | Transcription error | Americas | the Americas |
| 66 | 2-3 | Transcription error | a U.S. state without different approval | a different U.S. state without approval |
| 11 | 4-5 | Transcription error | like at spotify.com | lifeatspotify.com |

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on _8/19/25_.

_____
Lindsey Goring

Page 1 of 1